T. Clifton Clary v. State.

No. 25006. November 29, 1950.

*George W. Leonard, Jr.,* Colorado City, and *Runge & Hardeman,* by *Dorsey B. Hardeman,* San Angelo, for appellant.

*Eldon Mahon,* District Attorney, Colorado City, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

This is appellant's second appeal from a conviction for the murder of Odilla Clary, his wife.

Upon the former appeal from the district court of Runnels County, the conviction with punishment of 99 years in the penitentiary was reversed because of the overruling of appellant's motion to change the venue. The opinion of this court, setting out briefly the facts, is reported in 153 Texas Crim. Rep. 521; 221 S. W. 2d 274.

The venue was thereafter changed to Mitchell County, and this appeal is from a judgment of conviction in that county upon a jury verdict assessing the punishment at confinement in the penitentiary for life.

There are eighteen bills of exception found in the record. Only Bills of Exception Nos. 7, 8 and 10, which relate to the closing argument for the state, will be discussed.

Bill No. 7 complains of the following remarks as being inflammatory and prejudicial, and not based upon any evidence introduced upon the trial, and not within the realm of legitimate argument on the facts of the case:

"He tells the grand jury he was so exhausted—from all this rearing and tearing—ripping and snorting around the house, out to the butane tank, back to the house, why he fell down five times; he really must have been rearing and tearing, ripping and snorting. He was so exhausted, he went out and sat down by a post so he could regain his strength to drive to Cicero Smith's. He had to fix his story and face Cicero. He went and sat down by that post; he went to thinking about

that little woman in there burning up he could hear, he got to hearing her last screams; he didn't take long to shift over; he can shift from the gentleman and good husband at home, who thinks of and does those little things, to the libertine at the Dixie Club, with Mildred Blackstone. It didn't take him long now to shift from the murderer of that little helpless woman, his faithful wife, to the man weeping and sobbing, the man with the tears that Cicero Smith told us he was when he called him out. He sat there by that post a few minutes, he probably had on those red boots and that coat, he got to thinking he had to get rid of them. Do you think a man, the man ran around like he says he did all over that place in that bitter cold, falling and kicking cans around barefooted—running over everything and no cuts, no signs of bruises or anything on his feet; he could not do that and he wasn't without a coat either in that cold."

We find no evidence in the record upon which parts of the argument might be based or justified. The state's evidence, as well as that of the defense, appears to foreclose the possibility that deceased was able to scream or that she breathed after the fire started.

Bill No. 8 complains of the following remarks in said closing argument as a comment upon appellant's failure to testify:

"According to his story she is dead, very likely by 4:40 or right around that time, and according to his story she was up at about 3:00 o'clock. No one smelled or saw anything unusual—by that time she is dead, burned up, and nobody knows how it happened. She died in that fire; no one has told us how it happened and no one knows but him."

In this bill the trial court certifies:

"BE IT FURTHER REMEMBERED that in the course of such statement and at the conclusion thereof in the presence of the jury, the said O'Neal Dendy, District Attorney aforesaid pointed directly at the defendant who was seated near the counsel table, thus emphasizing defendant's failure to testify in his own behalf, which statement and comment coupled with the District Attorney's action in physically directing attention of the jury to the defendant who did not take the stand, was a comment upon and an allusion or reference to the defendant's failure to testify in his own behalf.

"BE IT FURTHER REMEMBERED that defendant did not take

the stand in his own behalf and was not a witness in the case and that such comment above set out was not made in response to any argument of counsel for defendant.

"BE IT FURTHER REMEMBERED that such comment, allusion or reference and pointing physically at the defendant was not made in response to any argument of the defendant's attorneys.

"BE IT FURTHER REMEMBERED that such comments and actions of the said O'Neal Dendy, District Attorney of the 119th Judicial District were highly inflammatory and prejudicial to defendant's rights and were contrary to law, were seasonably objected to by the defendant and were by the court overruled, to which action of the court the defendant then and there excepted."

Bill No. 10 complains of the following comments in said argument about the witness Bert Monroe:

"Clary is the one that had been going there since 1938. What's been their relationship? He didn't put in there. Did you ask her one question?"

In this bill following the quotation of the remarks, the trial court's certificate continues: "which statement constituted a comment upon or reference to the defendant's failure to testify in his own behalf.

"BE IT FURTHER REMEMBERED that the defendant did not take the stand in his own behalf and was not a witness in the case and that such comment set out was not made in response to any argument of counsel for the defendant.

"BE IT FURTHER REMEMBERED that such comment was highly inflammatory and prejudicial to the rights of the defendant and was contrary to law and was seasonably objected to and an exception duly reserved."

As to the argument complained of in Bill No. 10, we confess our inability to discover how or wherein such remarks became or constituted a reference to defendant's failure to testify. But the trial court so certifies, and says that the comment was "highly inflammatory and prejudicial to the rights of the defendant and was contrary to law."

We are unable to determine from the record that the trial court was in error in his certification of error and are bound by the recitations of the approved bill of exception.

As to Bill No. 8, the argument and conduct appear to violate

the rule that the failure of the defendant to testify shall not be commented upon or referred to.

In any event, under the certification of the trial court that the argument and conduct did constitute a reference to the defendant's failure to testify, and was contrary to law, highly prejudicial and inflammatory, our duty to order reversal of the judgment of conviction is clear. See Smith v. State, 136 Tex. Cr. R. 53, 123 S.W. 2d 655; Lemons v. State, 127 Tex. Cr. R. 235, 75 S.W. 2d 878; Traylor v. State, 120 Tex. Cr. R. 277, 47 S.W. 2d 310; McKee v. State, 116 Tex. Cr. R. 232, 34 S.W. 2d 592.

The judgment is reversed and the cause remanded.

Opinion approved by the court.