VICTOR F. ROGERS *alias* JACK ROGERS V. STATE.

No. 25108. January 31, 1951.

*Mac Wassell, R. B. Snell,* and *J. H. Splawn, Jr.,* Lamesa, for appellant.

*W. C. Huffaker, Jr.,* Sp. Pros., Tahoka, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Deceased, a popular and highly respected policeman of the city of Lamesa, met his death while in the performance of his duty as a peace officer by being beaten to death with his own pistol.

Appellant has been convicted of the murder, with punishment assessed at death.

It was the theory of the state that deceased apprehended appellant in the act of committing, or just after he had committed, the crime of burglary, and that the killing was a direct result of that apprehension.

Appellant denied any knowledge, because of his intoxicated condition, that he killed the deceased. His testimony raised the defense of self-defense from an unlawful arrest by deceased. He admitted having struck the deceased with the latter's pistol.

We come directly to a discussion of the question decisive of this appeal, which is the failure to change the venue.

The killing occurred some time during the early hours of March 29, 1950. Appellant was arrested soon thereafter. The morning edition of "The Lamesa Daily Reporter," published a few hours after the killing, carried an account thereof. That edition was followed a few hours later by an "extra" edition of that paper, which, among other things, carried a picture of the deceased and appellant, a statement that appellant admitted slaying the deceased, and other facts relative to the killing, including the statement made by appellant before the examining court. The edition of the paper the following day (March 30, 1950) carried pictures of the respective parties and stated

that appellant, in a signed statement to the county attorney, had admitted that he "beat the officer on the head with the latter's pistol." It was also stated that appellant had been carried to the Lubbock County Jail. The edition of March 31, 1950, referred to appellant as the "confessed slayer of City Policeman Claude W. Johnson," and asserted that he had repudiated the statement made by him to the county attorney soon after his arrest and had made another statement to the officers. This edition of the paper also carried the statement that "Rogers (appellant) had been taken to the Lubbock County jail as a preventive measure against possible mob violence." The edition of April 1, 1950, stated that appellant, again designated as the "confessed slayed of City Policeman Claude Johnson," had been indicted by the grand jury for the murder and also had been indicted for burglary. The edition of April 6, 1950, published the fact that a fund had been started and contributions were being made, to be turned over to his widow, to help defray the funeral expenses for deceased. The edition of April 8, 1950, carried an account of the filing of an application for the writ of habeas corpus by court-appointed counsel for appellant, who was there, also, referred to as the "confessed slayer of City Policeman Claude Johnson."

At the time of this incident, Dawson County, in which Lamesa is the principal city, had a population of approximately 20,000 inhabitants. The Lamesa Daily Reporter, published in the city of Lamesa, had a general circulation throughout the county. It published a morning and an afternoon edition, with a circulation of approximately 3,000 copies.

The "Avalanche Journal" published at Lubbock and having a circulation in Dawson County, carried articles substantially as published in the Lamesa paper above mentioned. The San Angelo, Abilene, Amarillo, Fort Worth, and Dallas papers having a circulation in Dawson County, carried stories of the killing similar to that contained in the Lamesa papers.

In addition to the newspaper publications, the operator of radio station KPET, at Lamesa, testified that the story of the killing was broadcast over that station, substantially as contained in the several publications of the Lamesa paper, theretofore pointed out, and that these broadcasts by his station reached possibly ninety per cent of the homes in Dawson County.

Witnesses testified both for the state and appellant. The testimony of these witnesses may be summed up by saying that

the case against appellant had been thoroughly discussed by the public in general, with no expressed sentiment favorable to the accused. That which was expressed was entirely against him.

Witnesses testified that, in their opinion, appellant could get a fair trial, because of their belief in the integrity of the jurors of the county and their ability to disregard anything that might have been published or that they had heard relative to the case and give the appellant a fair and impartial trial.

The hearing upon the motion for change of venue, at which time the foregoing facts were developed, occurred about two weeks after the killing, or on April 14, 1950. At the conclusion of the hearing, the change of venue was denied.

The case came on for trial proper on May 1, 1950, at which time 135 names had been drawn as the special venire. After excuses had been heard, there remained the names of 105 veniremen on the list. Out of the first 76 of these, 33 were excused because of fixed opinion in the case and 18 were excused because of conscientious scruples against inflicting the death penalty.

The bill of exception presenting this matter certifies that all of the 76 veniremen examined had, without exception, either read about the case or heard the radio broadcasts or discussion thereof on the streets of Lamesa or elsewhere in Dawson County.

After the examination of the 76th venireman had been completed, the appellant again urged his motion for a change of venue, which the trial court again overruled.

The record reflects that of the 105 veniremen mentioned, 44 were excused because of fixed opinions, 25 because of conscientious scruples, and 11 were selected as jurors. The 12th juror was selected from a panel of 15 talesmen summoned by the sheriff.

In the light of the holdings of this court, and especially that of Richardson v. State, 126 Tex. Cr. R. 223, 70 S. W. 2d 1003, we are constrained to agree that the learned trial judge erred in failing to change the venue of the case. See also, Runnels v. State, 152 Tex. Crim. Rep. 268, 213 S. W. 2d 545; Clary v. State, 153 Tex. Cr. R. 521, 221 S. W. 2d 274.

A change of venue by a trial court of his own motion, or by granting of a motion to change the venue of a criminal case, is not an indictment against or a challenge to the honesty, integrity, or ability of the citizenship of a county to give one accused of crime a fair and impartial trial. The Constitution guarantees to every person accused of crime a fair and impartial trial. It is in the furtherance of this guarantee that provision is made for changing the venue of trial. If the facts, separately or collectively, render it improbable that, pursing the methods provided, a fair and impartial trial can be had, a change of venue should be ordered. Cox v. State, 90 Tex. Cr. R. 106, 234 S. W. 72.

The conclusion is expressed that the instant facts bring this case within the rule stated, especially in view of the population of Dawson County and the expressed opinion of the veniremen as shown by voir dire examination.

Appellant moved to quash the indictment because of the long-continued and uninterrupted failure to summon for grand jury service members of the Mexican or Latin-American race, of which he was one.

It has been the consistent holding of this court that the statute law of this state furnishes the procedure for the selection, organization, and empaneling of grand jurors in this state, and that, in the absence of a showing of express discrimination, a grand jury empaneled in accordance therewith is valid. No such discrimination is here shown or suggested.

The Supreme Court of the United States, in holding the failure to empanel members of the Negro race upon grand juries of this state shows discrimination against members of that race in the organization of the grand jury, has not, in so far as we are advised, extended that rule to include and apply to members of different nationalities. Mexicans or Latin-Americans are not of a race different to that of the white. Until the Supreme Court of the United States extend the rule of discrimination, above mentioned, to include members of different nationalities, we shall continue to hold as we have always held relative to discrimination in the organization of grand juries of this state. Salazar v. State, 149 Tex. Cr. R. 260, 193 S. W. 2d 211.

The indictment in this case was not subject to the defect claimed by appellant.

Other matters presented will hardly arise upon another trial and no necessity exists for a discussion thereof.

Because of the failure to change the venue, the judgment is reversed and the cause remanded.

Opinion approved by the court.