Elmer Wayne HENLEY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 53561–53566.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 20, 1978.

Rehearing Denied Jan. 24, 1979.

Will Gray, Terrence A. Gaiser, Edwin F. Pegelow, Houston, Rudy Esquivel, San Antonio, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Don L. Lambright, Asst. Dist. Attys., Houston, Lucien B. Campbell and Douglas C. Young, Asst. Dist. Attys., San Antonio, for the State.

## OPINION

PHILLIPS, Judge.

The following opinion was largely the work of the late Honorable Howard P. Green, Commissioner of the Court of Criminal Appeals.

In a single trial before a jury appellant was convicted for murder with malice in six cases. See Articles 1256 and 1257(b), V.A. P.C., 1925. Punishment was assessed by the jury at 99 years in each of the six causes. The court ordered that the sentences run consecutively.

In grounds of error two and three appellant contends the trial court erred in overruling his motion for change of venue without affording him a pretrial evidentiary hearing in violation of Articles 31.03 and 31.04, V.A.C.C.P., and due process of law.

On December 17, 1973, approximately four months after appellant was indicted by the Harris County grand jury for six of the highly publicized mass, homosexual rape and torture murders, Honorable William M. Hatten, Judge of the 176th District Court, Harris County, commenced hearings on appellant's numerous pretrial motions in Cause No. 198,892. Appellant did not file a

motion for change of venue from Harris County but filed a motion for continuance asserting that "Because of the massive dissemination of potentially prejudicial material by all elements of the news media . . the defendant cannot obtain a fair trial at this time." Finding "too great a prejudice" existing against appellant in Harris County and all adjoining counties, Judge Hatten on his own motion [1] ordered a change of venue in Cause No. 198,892.[2] Judge Hatten transferred the case to the 175th Judicial District in San Antonio, Bexar County, where it was assigned No. 74CR–424.

Honorable Preston H. Dial, Judge of the 175th District Court began pretrial hearings on April 8, 1974. The following day appellant filed a motion for change of venue in compliance with Article 31.03, V.A.C.C.P. Appellant's motion was supported by his sworn affidavit and sworn affidavits of nine Bexar County citizens, all of which asserted that "there does in fact exist in said Bexar County, Texas so great a prejudice against him that the said ELMER WAYNE HENLEY, JR., Defendant, cannot obtain a fair and impartial trial of said cause in said County." On April 22, 1974, following the State's filing of four sworn affidaits controverting appellant's motion for change of venue,[3] the trial court advised appellant that:

> "It is this Court's intention not to take evidence on the Motion to Change Venue at this time. I intend to attempt to select a Jury and if that can be done successfully, then I will overrule your Motion for Change of Venue; but, if we cannot select a Jury successfully here in Bexar County, then I will grant your Motion."

Appellant was not allowed to introduce evidence on a bill of exception to the court's ruling that no pretrial hearing on change of venue would be conducted. On May 13, 1974, appellant filed a motion for leave to file and a petition for writ of mandamus in

the Supreme Court of Texas to compel a ruling by the trial court on his motion for change of venue. The petition was denied. On May 13, 1974, when the consolidated cases were called for trial, appellant again requested that the court rule on his motion for change of venue. The court refused.

Following the examination of 124 venire persons, which resulted in the selection of 32 persons as the jury panel from which the jury was ultimately selected, the court stated:

> "THE COURT: That completes the qualification of the Jury Panel.
> "MR. GRAY: Over our objection and exception, Your Honor.
> "THE COURT: I understand. The Motion for Change of Venue is now denied.
> "MR. GRAY: Note our exception, Your Honor. We would like to present proof, at this time, in support of our Motion for Change of Venue, for our Bill of Exception.
> "THE COURT: That will be denied.
> "MR. GRAY: Note our exception."

Appellant was tried and on July 15, 1974, a guilty verdict of murder with malice was returned in each of the six causes. On July 25, 1974, appellant filed a motion for new trial alleging, among other things, that the trial court committed reversible error in refusing to grant appellant an evidentiary hearing, in advance of trial, on his motion for change of venue. At the hearing on appellant's motion for new trial the trial court allowed appellant to introduce evidence in support of appellant's bill of exception to the trial court's overruling of his change of venue motion.

The issue on appeal is not whether the trial court erred by not granting appellant a change of venue, nor whether the trial court erred in delaying its ruling on appellant's motion for change of venue until voir dire had been conducted. The precise question to be decided is this:

---

1. See Article 31.01, V.A.C.C.P.

2. On the joint motion of appellant and the State, Judge Hatten also ordered a venue change from Harris County to Bexar County in

appellant's five other causes where they were consolidated for trial with Cause No. 74CR–424.

3. See Article 31.04, V.A.C.C.P.

If a defendant timely files a properly verified motion for change of venue under Article 31.03, V.A.C.C.P., is it an abuse of discretion and a denial of due process for the trial court to overrule the motion without affording defendant a pretrial hearing to present evidence in support of the motion?

■ A criminal defendant is guaranteed a fair trial by an impartial jury. Article 1, Section 10, Texas Constitution; Sixth Amendment to the United States Constitution; Article 1.05, V.A.C.C.P. Due process provides for a change of venue when a defendant demonstrates his inability to obtain an impartial jury or fair trial at the place of venue. *Groppi v. Wisconsin,* 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

Article 3, Section 45, of the Texas Constitution provides:

"The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the Legislature shall pass laws for that purpose."

The history of Chapter 31, V.A.C.C.P., demonstrates the tenacity with which the Texas Legislature has discharged its obligations under the above provision. Articles 31.03 and 31.04,[4] V.A.C.C.P., the provisions controlling the disposition of this case, provide, in pertinent part, as follows:

"A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, *the truth and sufficiency of which the court shall determine:*

"1. That there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial; and

"2. That there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial.

. . . . .

"The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. *The issue thus formed shall be tried by the judge,* and the motion granted or refused, as the law and facts shall warrant." (Emphasis added.)

Apart from the venue statutes, as an additional safeguard to ensure an accused an impartial jury and fair trial, the Legislature has provided that an individual juror may be challenged for cause under Article 35.16, V.A.C.C.P., for the following reasons:

"9. That he has a bias or prejudice in favor of or against the defendant;

"10. That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative, he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed, and the extent to which it will affect his action; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law

4. A change of venue motion drafted in compliance with Article 31.03 and supported by properly verified affidavits entitles a defendant to a change of venue as a matter of law, unless the motion is controverted by the State. *Wall v. State,* Tex.Cr.App., 417 S.W.2d 59; *Flores v. State,* Tex.Cr.App., 493 S.W.2d 785.

and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged; . . ."

In the instant case the trial court refused to conduct a pretrial evidentiary hearing as mandated by the language of Articles 31.03 and 31.04, V.A.C.C.P., on appellant's controverted motion for change of venue.[5] Instead, the trial court predicated its denial of appellant's motion solely upon the successful qualification of a jury panel. In so doing the court confused the grounds for change of venue with the grounds for juror challenge for cause.

In the case of *Randle v. State,* 34 Tex. Cr.R. 43, 28 S.W. 953, confusion similar to that evidenced in the trial of this case concerning the proper procedure connected with a motion to change venue resulted in the reversal of a murder conviction. In that case, the trial court began a pretrial hearing on the motion to change venue but stopped it sua sponte because the evidence reflected a prejudice against the cause (a Dallas murder case) and not the individual defendant on trial. The trial court concluded that Article 578, C.C.P., (the predecessor of Article 31.03, V.A.C.C.P.) contemplated a change of venue only when the evidence showed a prejudice directed at the individual defendant. It further concluded that evidence of a prejudice against the cause would not justify a change of venue unless a fair and impartial jury could not be obtained through regular jury voir dire procedures.. Article 579, C.C.P. This Court concluded that such a distinction was inappropriate and operated to deprive the defendant of a fair and impartial jury. As stated by this Court in *Randle* and of particular significance to the case at bar:

"The prejudice in the county may be such that jurors will qualify themselves who are not impartial, . . .

\* \* \* \* \* \*

"We will not pursue this line of discussion further, but desire to say in regard to change of venue that it frequently occurs that good men, honest citizens, swear that the accused cannot obtain a fair trial because of prejudice in the county. Ignorant people, persons uninformed as to the legal methods provided for obtaining juries, become apparently astonished at such affidavits and inquire if it be true that 12 honest, fair men cannot be found in a county with whom to try the accused. Such questions, by their frequency of occurrence, have almost ceased to cause surprise, but evidence a wonderful degree of ignorance. . . . [H]ence the jury must be selected under the rules and by the methods prescribed by law, and all laws in regard to changes of venue are enacted with a view to this fact. As has been forcefully said by the supreme court of Iowa in *State v. Nash,* 7 Iowa (347), 371: 'The right to speedy and public trial by an impartial jury is guarantied [sic] by the constitution of this state to all persons accused of crime. It becomes us not to place a light estimate upon a right secured to us by such high authority. It is important to maintain the usefulness of our whole judicial system, that no suspicion of popular excitement in the administration of the law should be allowed to impair the public confidence in the fairness and impartiality of judicial proceedings. An excited state of public feeling and opinion is always the most unfavorable for the investigation of the truth. Not only should the mind of the juror be wholly without bias and prejudice, it should not only be free from all undue feeling and excitement in itself, but it should be as far as possible removed from the influence of prejudice and feeling and

5. In *Parker v. State,* 91 Tex.Cr.R. 68, 238 S.W. 943, we acknowledged that on a controverted motion for change of venue the trial judge has the duty to try the issue and grant the motion if warranted by the law and the facts. Although *Parker* was decided under Article 567, Vernon's

Ann.C.C.P. (1925), the predecessor statute to Article 31.04, V.A.C.C.P., the statutes are identical in language except 31.04 substituted the word "motion" in lieu of the word "application."

excitement in others. A circumstance of small importance in itself may often, in the midst of a community stirred by passion and excitement, serve to turn the scales of justice. It is a difficult matter for a court in all cases to draw the true line of distinction, and to say when there is and when there is not such a state of popular feeling and prejudice as to prevent a fair and impartial trial. Every cause must be judged by its own circumstances. * * * There is, however, to be guarded against, a feeling and a prejudice not only within but without the jury box; and a jury, however right their intentions, are not always proof against the sympathies of the crowd. Influence of popular excitement and prejudice is too strong for the strongest resolution.' "

In 1898 this Court recognized, in *Meyers v. State,* 39 Tex.Cr.R. 500, 46 S.W. 817, the distinction between the concept of change of venue and juror challenges for cause:

"[T]he jury is obtained and impaneled under rules of law, and the law providing for the change of venue proceeds upon the hypothesis that the prejudice may be so great and universal in the county as that improper jurors may be obtained, notwithstanding every test may be applied to them. If there were no danger of obtaining prejudiced jurors on the panel, then the law providing for a change of venue upon this ground has no foundation in reason. If obnoxious jurors could be detected and kept from the panel by the question provided for in the Code, then there would be no reason for a change of venue. But . . . the law providing for the change proceeds upon the assumption that, notwithstanding all tests are made, there may be such a prejudice in the county as will render it probable that an impartial juror might serve."

In *Faulkner v. State,* 43 Tex.Cr.R. 311, 65 S.W. 1093, the Court noted that:

"Prejudice is a sinister quality. It may possess a man and he not be aware of it; or, being aware of it, he may purposely conceal it, in order that he may vent his revenge." Also see *Cortez v. State,* 44 Tex.Cr.R. 169, 69 S.W. 537.

■ The aforementioned cases recognize the problem of obtaining answers on voir dire affected by conscious or subconscious juror prejudice resulting from widespread inflammatory news coverage. Therefore, a change of venue is a remedy to assure an accused a fair trial when extensive news coverage has raised substantial doubts about the effectiveness of voir dire for obtaining an impartial jury. See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press, Comments, pp. 126–128, (approved draft, 1968).

As we understand recent Supreme Court cases, the test to be applied by the court in ruling on a change of venue motion is:

"Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial." *Adami v. State,* Tex.Cr. App., 524 S.W.2d (693) 695, quoting *Pamplin v. Mason,* 364 F.2d 1 (5th Cir. 1966); *Morris v. State,* Tex.Cr.App., 488 S.W.2d 768; *Bridges v. State,* Tex.Cr. App., 471 S.W.2d 827.

■ We observe that under the rule in *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), and *Adami v. State,* supra, the trial court is not precluded from utilizing voir dire to help gauge the "community climate of opinion as to a defendant"; however, regardless of the successful qualification of a jury panel, the evidence adduced during the pretrial hearing on the venue motion may dictate that a change of venue be granted in order to assure the accused a fair and impartial trial. See also *Freeman v. State,* Tex.Cr.App., 556 S.W.2d 287.

■ Some relevant factors in determining whether outside influences affecting the community climate of opinion as to a defendant are inherently suspect are (1) the nature of pretrial publicity and the particular degree to which it has circulated in the

community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. See generally, Annotation, 33 A.L.R.3d 17 (1970). See also *Adami v. State,* supra; *Freeman v. State,* supra.

In the instant case the trial court refused to allow appellant to introduce evidence in support of his motion for change of venue and overruled his motion following the successful qualification of a jury panel. In ruling on appellant's motion the trial court was only concerned with whether it was possible to draw veniremen who would testify on voir dire that they would give defendant a fair trial, uninfluenced by what they had heard or seen outside the courtroom.

As discussed, supra, the successful qualification of a jury panel is not the *sole* criterion in determining whether a defendant is entitled to a change of venue. See *Rideau v. Louisiana,* supra; *Adami v. State,* supra. The primary factor for the court's consideration in ruling on a venue change is whether the "outside influences affecting the community's climate of opinion as to a defendant are inherently suspect." *Adami v. State,* supra; *Freeman v. State,* supra; *Morris v. State,* supra; *Bridges v. State,* supra; *Pamplin v. Mason,* 364 F.2d 1 (5th Cir. 1966).

Appellant was entitled to a change of venue if he could show, even though it would be possible to select a jury whose members were not subject to a challenge for cause, that there were influences in the community which could affect the answers on voir dire, or the testimony of witnesses at trial or that for any other reason a fair and impartial trial could not be had in Bexar County.

As will be noted upon reference to Articles 31.03 and 31.04, the trial court is vested with the responsibility of determining the "truth and sufficiency" of the affidavits alleging the grounds for a change of venue and when an issue is formed as to those grounds by the filing of controverting affidavits, that issue "shall be tried by the judge, and the motion granted or refused, as the law and facts shall warrant." As already demonstrated, the issues raised by the motion to change venue affidavits cannot be fully and adequately tried through the more narrow jury voir dire procedure. See Article 35.16, Sections 8 and 9, V.A.C.C.P. Further, the trial court's denial of a defendant's motion for a change of venue, without allowing the defendant an opportunity to present evidence in support of his motion, was expressly condemned by this Court in *Burleson v. State,* 131 Tex.Cr.R. 576, 100 S.W.2d 1019. The dissent admits that the trial court failed to comport with "accepted procedure," but seeks to excuse the omission by analogy. The analogy to the trial court's discretion in regulating trial procedure vis-a-vis evidentiary rulings and the perfecting of a bill of error with respect thereto ignores a fundamental distinction between the questions involved. The dissent's analogy presupposes the propriety of conducting the trial. The procedure demanded of the trial court under Chapter 31, V.A.C.C.P. is for the threshold issue of whether a trial should be conducted in the county involved. The timing of the Chapter 31 hearing is critical. It is no less mandatory a statute for its failure to expressly designate the precise timing for a hearing. To argue that the inquiry mandated by Chapter 31 could be just as efficaciously conducted in a hearing on a motion for new trial is to ignore the venue issue's threshold nature. It is indeed putting the horse behind the cart. The defendant has made his offer of proof with the affidavits filed in support of the motion for change of venue. The filing of controverting affidavits by the State "joins the issues" and thus requires the trial court to resolve this preliminary question. The dissent properly

places the burden of proof on the defendant for proof of the allegations for a change of venue. The record clearly reflects that the defendant was prepared to meet this challenge, but was frustrated by the trial court's failure to conduct a pretrial hearing on the issue. The dissent claims that the trial court was within its discretion when it denied the motion to change venue without a showing by the defendant—a showing which the trial court forestalled by refusing the pretrial evidentiary hearing. Such mental gymnastics should not be played when questions of admittedly constitutional dimension are involved.

■■■ We note that during the motion for new trial hearing the trial court allowed appellant to put on evidence in support of his bill of exception to the court's denial of his motion for change of venue. While the evidence adduced during the hearing is included in the record before us on appeal we decline to examine it in order to determine whether the trial judge abused his discretion in not granting appellant a change of venue. That is not the issue before us. The abuse of discretion condemned here is the trial court's failure to grant appellant a pretrial hearing on his change of venue motion. If the hearing on a change of venue is postponed until after trial, a great deal of time, effort and money will be wasted if the evidence adduced during the post-trial hearing compels a new trial in another county. Further, it is unlikely that following a jury verdict of guilty in a highly publicized mass, sex-torture killing case the trial court would readily erase the jury's pronouncement and grant appellant another trial. Lastly, such a procedure would allow the trial courts to escape their duty of making an independent assessment of the merits of the change of venue motion and to delegate that responsibility to an appellate court. The dictates of due process and Chapter 31, V.A.C.C.P., necessitate that a defendant's right to an impartial jury and fair trial be protected *in the first instance* by the trial court. A defendant must not needlessly be denied due process by a trial court and suffer the emotional rigors and expense of a criminal trial, and possibly incarceration pending appeal only to be afforded due process months or even years later by an appellate court. Such a state of affairs is in itself a denial of due process.

We do not call for a "fantasy world" nor do we address the issues raised by the coexistence of the rights of a free press and the right to a fair and impartial jury trial. We hold only that when there is created an issue as to the propriety of venue under Chapter 31, V.A.C.C.P., it is to be resolved only after, at a minimum, a pretrial evidentiary hearing.

■■■ Therefore, we are constrained to hold under the cases cited and the facts of this case that the trial court's refusal to grant appellant a pretrial hearing to introduce evidence in support of his motion for change of venue precluded a determination, as contemplated by our law, of the community attitude toward appellant and constituted a deprivation of due process.

In the event of a retrial, we must express our deep concern over appellant's contention that he was denied a fair trial when the trial court refused to sequester the jury and overruled his objection to placing newsmen within the bar.[6]

6. At the hearing on his motion for new trial, appellant introduced articles from four newspapers: the San Antonio Express, the San Antonio News, the combined Sunday Express-News, and the San Antonio Light. It was stipulated that the coverage of the newspapers to households was as follows:

| The San Antonio Express: | 75,075 | (San Antonio daily average) |
| | 61,986 | (Remainder of Bexar County daily average) |
| The San Antonio News: | 68,782 | (San Antonio daily average) |
| | 60,130 | (Remainder of Bexar County daily average) |
| The Express-News: | 152,107 | (Combined circulation) |

The record reflects that there was an extra jury box within the courtroom. This extra jury box was across the room and facing the jury inside the bar. During the trial artists and reporters representing the various news media occupied this box. On July 4, 7, 9, 12, and 16, a picture of one or more jurors was on the *front page* of a local newspaper, having been sketched by one of the artists in the extra jury box. Other drawings of jurors were televised by all the major television stations.

Appellant moved to sequester the jury two months prior to trial, which motion was denied. He renewed that motion during voir dire and again after the jury was selected; both motions were denied. On July 10, 1974, pursuant to a defense motion, the trial court questioned the jury to determine any "outside contact." While all the jurors denied it would affect their verdict, it was established that two jurors had been personally contacted by newsmen concerning the case. Six jurors stated that members of their family had been contacted by newsmen.

It was further stipulated that the daily average circulation for the San Antonio Light was as follows:

| | |
|---|---|
| Weekday evenings: | 107,435 |
| Saturday morning: | 103,229 |
| Sunday: | 137,838 |

According to 1973 estimates used by all the papers, San Antonio had 229,300 households while Bexar County had 240,900 households. The evidence compiled by the appellant and introduced at the hearing on motion for new trial consisted of 240 news stories which appeared in the four newspapers from August, 1973, to the end of July, 1974. Of those articles, 102 appeared during trial and jury selection which began July 1, 1974.

The television coverage of the events surrounding the crimes and of the trial itself by local television stations was just as overwhelming. The estimated ratings of local news telecasts by the three major San Antonio television stations, prepared by Arbitron Television, are as follows:

| WOAI–TV | 11:30 a. m. – 12:00 o'clock noon | 29,000 total TV households with 39,000 adults |
|---|---|---|
| WOAI–TV | 6:00 – 7:00 p. m. | 69,000 total TV households with 103,000 adults |
| WOAI–TV | 10:00 – 10:30 p. m. | 64,000 total TV households with 98,000 adults |
| KENS–TV | 12:00 – 12:30 p. m. | 40,000 total TV households with 55,000 adults |
| KENS–TV | 10:00 – 10:15 p. m. | 81,000 total TV households with 126,000 adults |
| KSAT–TV | 6:00 – 6:30 p. m. | 32,000 total TV households with 50,000 adults |
| KSAT–TV | 10:00 – 10:30 p. m. | 52,000 total TV households with 84,000 adults |

---

The extent of this coverage in Bexar County is reflected by the WOAI–TV log of the Henley "script rundown." This log reveals that from this *single* television station there were 85 telecasts dealing with the case from August, 1973, through July, 1974. These telecasts ranged in duration from 10 seconds to a full three minutes.

Radio coverage was just as extensive. The "Henley log" from *one* radio station, KBVC, revealed that there were 608 wire stories and rewrites, 218 of which were during July, 1974. The pervasiveness of this coverage was demonstrated by the fact that of 124 jurors questioned, over one half, 64, had formed an opinion as to the appellant's guilt or innocence.

men, and one juror had been contacted by a friend. Three jurors were not contacted in any way. After questioning the assistant manager of a local newspaper, the trial court admonished the press not to contact the jurors or members of their family and not to attempt to discuss the case with them. Appellant again moved to sequester the jury, which motion was denied.

On July 11, 1974, the court, after learning of further possible contact by the media, questioned six jurors. Two jurors stated they had not been contacted. Three jurors stated members of their family had been contacted and one juror stated that her son's girlfriend had been contacted. The court then refused to question the remaining jurors individually but simply addressed one general question to the panel concerning possible contact by the news media. There was no response from the jury. Later, appellant's motion to sequester the jury was once more denied.

 In this State the decision to sequester the jury is within the discretion of the trial court. Article 35.23, V.A.C.C.P.; *Freeman v. State*, 556 S.W.2d 287. However, in exercising that discretion in such a highly publicized case as the one before us today, the trial court must exercise caution to ensure the accused is afforded due process and a fair trial. In reaching a decision, the trial court must necessarily take into consideration the potential impact of the news media on the jurors.

In *Estes v. Texas*, 381 U.S. 532, 545, 85 S.Ct. 1628, 1634, 14 L.Ed.2d 543 (1965), the United States Supreme Court noted the potential impact of one medium, television, on the jurors:

"The conscious or unconscious effect that this may have on the juror's judgment cannot be evaluated, but experience indicates that it is not only possible but highly probable that it will have a direct bearing on his vote as to guilt or innocence. Where pretrial publicity of all kinds has created intense public feeling which is aggravated by the telecasting or picturing of the trial the televised jurors cannot help but feel the pressures of knowing that friends and neighbors have their eyes upon them. If the community be hostile to an accused a televised juror, realizing that he must return to neighbors who saw the trial themselves, may well be led 'not to hold the balance nice, clear and true between the State and the accused. * * *' "

*Estes* was reversed even though the jurors were sequestered while in the instant case they were not.

In the later case of *Sheppard v. Maxwell*,[7] supra, the United States Supreme Court stated:

"From the cases coming here we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is

7. We note that in *Sheppard* newsmen were allowed to sit at a table inside the bar. In discussing this fact, the Court stated:

"At a temporary table within a few feet of the jury box and counsel table sat some 20 reporters staring at Sheppard and taking notes. The erection of a press table for reporters inside the bar is unprecedented. The bar of the court is reserved for counsel, providing them a safe place in which to keep papers and exhibits, and to confer privately with client and co-counsel. It is designed to protect the witness and the jury from any distractions, intrusions or influences, and to permit bench discussions of the judge's rulings away from the hearing of the public and the jury."

While we do not here reach this issue, it cannot be denied that such a procedure only serves to impress upon the jury the sensational nature of the case.

nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. In addition, sequestration of the jury was something the judge should have raised *sua sponte* with counsel. If publicity during the proceedings threatens the fairness of the trial, a new trial should be ordered. But we must remember that reversals are palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."

We do not here decide whether the facts in the instant case present the great abuses of discretion which were apparent in the *Estes* and *Sheppard* cases nor whether the failure to sequester the jury denied appellant due process. In the event of a retrial, we are confident the trial court will take steps to remove any basis for this due process question to again be raised.

For the reasons stated herein, the judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The majority holds without discussing the evidence that the court abused its discretion in denying appellant's motion for change of venue. It does so solely on the ground that the court did not let him put on evidence at a pre-trial hearing, even though the evidence presented by appellant in support of his motion was insufficient to merit a change of venue. Even if this evidence had been presented prior to trial, the court would not have committed error in denying a change of venue. Under such circumstances, any error committed by the court in delaying the hearing on the motion until the conclusion of testimony was harmless.

The record is comprised of 5,557 pages in twenty-three volumes, accompanied by numerous exhibits. Briefly summarized, the record shows that on August 8, 1973, appellant was taken into custody by Pasadena police in connection with the murder of Dean Arnold Corll. After receiving a *Miranda*[1] warning from the municipal judge of Pasadena, appellant made to police officers a voluntary written statement which was admitted into evidence. In this statement he described his three year relationship with Dean Corll and the activities which culminated in the murders.

Appellant stated that at the age of fourteen he was introduced to Corll who told him that he belonged to a Dallas organization engaged in the buying and selling of teen-aged boys. Corll offered appellant monetary rewards in exchange for his services in procuring young boys. Approximately a year after he became acquainted with Corll, appellant lured a male teenager to Corll's home. There he tricked the young man into putting on handcuffs from which he could not escape. Corll then bound the boy with rope and gagged him with adhesive tape. Appellant was paid $200 for the boy. He later discovered that this victim whom he had procured had been homosexually raped and murdered by Corll.

Beginning with this incident, appellant described for police a series of murders in which he had collaborated with Dean Corll and David Owen Brooks. All of the victims were handcuffed both hand and foot to a large board in Corll's home where he homosexually raped and committed sodomy upon them. Appellant, Corll and Brooks subjected the victims to various forms of physical and sexual torture before shooting or strangling them to death. The nude bodies of the boys were transported in a wooden "body box" to three sites outside the city of Houston where, wrapped in plastic and tied with rope, they were buried in shallow graves. As he made these revelations, appellant led officers on a tour of disinter-

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ment which ultimately resulted in the recovery of twenty-seven bodies.

Appellant was indicted by the Harris County grand jury for the murder of six of the deceased individuals. On December 17, 1973, the Honorable William M. Hatten, Judge of the 176th District Court of Harris County, commenced hearings on appellant's pre-trial motions. Appellant filed no motion for change of venue in Harris County. On January 16, 1974, defense counsel filed a motion for continuance alleging that because of the "massive dissemination of potentially prejudicial material by all elements of the news media" appellant could not obtain a fair trial at that time. On February 1, 1974, Judge Hatten, on his own motion, entered an order changing venue to the 175th District Court of Bexar County.

On April 8, 1974, pre-trial hearings began in the 175th District Court, the Honorable Preston H. Dial, Jr., presiding. The following day appellant filed a motion for change of venue in accordance with Article 31.03, V.A.C.C.P., supported by his own sworn affidavit and those of nine compurgators. Each affidavit stated that, in the compurgator's opinion, there existed so great a prejudice against appellant in Bexar County that he could not obtain a fair and impartial trial. Four controverting affidavits were filed by the State challenging both the appellant's motion for change of venue and the ability of appellant's compurgators to determine whether or not such a pervasive community prejudice against the appellant existed in Bexar County. See Article 31.04, V.A.C.C.P.

On April 22, 1974, the court entertained appellant's previously filed motion for change of venue and stated that it would not take evidence on the motion at that time, but offered to let him place in the record anything which he desired in the form of affidavits or hearsay statements. Under this ruling, appellant could have made an offer of proof under Article 40.-09(6)(d), V.A.C.C.P., which provides:

"(d) . . . The court, in its discretion, may allow an offer of proof in the form of a concise statement by the party offering the same of what the excluded evidence would show, to be made before the reporter out of the presence of the jury as an alternative method of causing the record to show such excluded testimony or other evidence, and in the event the record contains transcription of the reporter's notes showing such an offer of proof the same shall be accepted on appeal as establishing what such excluded testimony or other evidence would have consisted of had it been admitted into evidence."

The court held its ruling on appellant's motion in abeyance pending the outcome of voir dire examination of the prospective jurors, stating that if a jury panel of thirty-two could not be successfully chosen in Bexar County it would grant the motion for change of venue. Following the qualification of the panel of thirty-two, the court overruled the motion for change of venue.

Prior to trial, appellant filed a petition for writ of mandamus in the Supreme Court of Texas seeking to compel the trial court to rule on the motion for change of venue prior to voir dire. The writ was denied.

The State contends that the denial of a pre-trial evidentiary hearing on the motion for change of venue was necessary in order to prevent the proliferation of needless pre-trial publicity.[2] The State further contends

2. In a letter to Harris County District Attorney Carol Vance and defense counsel Will Gray and Edwin Pegelow, dated February 25, 1974, and included in the record, Judge Dial wrote:

"I note that there has been no ruling on the materiality of the confessions or the admissibility of the oral confessions. Apparently both sides were afforded full opportunity to develop the evidence material to any confessions. I would like to avoid another evidentiary hearing on the confessions as this might generate needless publicity in Bexar County."

that this decision on the part of the trial judge was made in response to the actions of appellant's counsel whose object was to use the news media's right to report the evidence adduced at pre-trial hearings as a vehicle for spreading the abhorrent facts of the crime in each city in which the defendant was to be tried until an impartial jury could no longer be selected there. The State urges that appellant's counsel, at pre-trial hearings in Houston, introduced so much damaging testimony that it prevented a trial from being held there. There was more incriminating evidence introduced by appellant in Houston than there was by the State during the trial on the merits. It was counsel's aim, the State alleges, to so widely publicize the facts of the case as to ultimately render it impossible for appellant to be tried anywhere in the State of Texas.

Although the trial court did not follow the accepted procedure in overruling appellant's motion for change of venue without conducting an evidentiary hearing, it did not commit reversible error. This Court should consider appellant's case as one in which the trial judge erroneously refuses to admit testimony before a jury but later permits the defendant to develop such evidence to determine if the error is reversible.

When appellant's motion for change of venue was entertained, the court informed him that it did not intend to hear evidence on the motion *at that time.* Article 31.04, supra, does not specify when the hearing on a motion for change of venue is to be conducted. Thus, no mandatory statute was violated. The court, moreover, permitted appellant to introduce anything he wished in the form of additional affidavits or hearsay statements as an offer of proof. When a defendant offers testimony during a trial and the court excludes it, error could be

preserved by permitting the witness to testify outside the presence of the jury. If the court refuses to allow this, the proper way to show error is for the defendant to make an offer of proof. *See* Article 40.09(6)(d), supra.

Although given the opportunity, appellant failed to make an offer of proof showing the substance of the evidence which he would have introduced at an evidentiary hearing and that such evidence would demonstrate the existence of a community prejudice against appellant so strong as to render a fair and impartial trial improbable. There was no proof by any witness presented at the motion for new trial to show such a prejudice.[3]

While it is true that at the motion for new trial appellant introduced extensive evidence showing the existence of publicity in the community, the mere showing of publicity does not itself establish the existence of prejudice or necessitate a change of venue. *Freeman v. State,* 556 S.W.2d 287 (Tex.Cr. App.1977), *cert. denied* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978); *Knight v. State,* 538 S.W.2d 101 (Tex.Cr.App.1975); *Garcia v. State,* 513 S.W.2d 82 (Tex.Cr.App. 1974); *Creel v. State,* 493 S.W.2d 814 (Tex. Cr.App.1973); *Bridges v. State,* 471 S.W.2d 827 (Tex.Cr.App.1971); *Wallace v. State,* 458 S.W.2d 67 (Tex.Cr.App.1970); *Ward v. State,* 427 S.W.2d 876 (Tex.Cr.App.1968); *Mendez v. State,* 362 S.W.2d 841 (Tex.Cr. App.1963).

Appellant requested that he be allowed to immediately introduce evidence on a bill of exception. Counsel was informed by the court that he would be given an opportunity to do so at a later time. Appellant was aware that the court did not intend to preclude such evidence but only to delay the

---

**3.** Although not directly in point, the procedure employed after the denial of a motion for continuance is comparable. When a court erroneously overrules a motion for continuance, a defendant, in order to present reversible error, must show what testimony an absent witness would have given had he been present during the trial. If the testimony adduced at the mo-

tion for new trial does not show that its exclusion harmed the defendant, then no reversible error results. *Leach v. State,* 548 S.W.2d 383 (Tex.Cr.App.1977); *McCloud v. State,* 494 S.W.2d 888 (Tex.Cr.App.1973); *Palasota v. State,* 460 S.W.2d 137 (Tex.Cr.App.1970).

hearing of the evidence to prevent undue publicity. Such a delay was not error. In *Weeks v. State,* 161 Tex.Cr.R. 202, 275 S.W.2d 685 (1955), the refusal of the court to retire the jury at the defendant's request in order to perfect his bill of exception was held not to be error in view of the court's recalling and tendering of the witness to the defendant at the conclusion of all the testimony for the purpose of permitting counsel to perfect his bill. This Court held that since the defendant was eventually afforded a full opportunity to perfect his bill of exception no harm was shown. *Accord Pate v. State,* 171 Tex.Cr.R. 126, 345 S.W.2d 532 (1961); *Davidson v. State,* 162 Tex.Cr.R. 640, 288 S.W.2d 93 (1956).

As it had promised, the court in the present case allowed appellant an opportunity to make an offer of proof during the trial and to present evidence on his bill of exception at the conclusion of testimony. All of the evidence presented at that time is before this Court.

Appellant's application for change of venue was controverted by the State. Appellant, therefore, bore the burden of presenting evidence which would prove the existence of prejudice in the community. Absent such a showing, the trial court acted within the limits of its discretion in denying a change of venue. *James v. State,* 546 S.W.2d 306 (Tex.Cr.App.1977); *Garcia v. State,* 537 S.W.2d 930 (Tex.Cr.App.1976); *Mitchell v. State,* 524 S.W.2d 510 (Tex.Cr.App.1975); *Mansell v. State,* 364 S.W.2d 391 (Tex.Cr.App.1963).

In *Adami v. State,* 524 S.W.2d 693 (Tex.Cr.App.1975), this Court recognized that the question of change of venue is one of constitutional dimension. But there is no constitutional infirmity in a trial court's denial of a change of venue if a defendant has actually received a trial by an impartial jury. *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 103 (1962). The test of whether such an impartial jury has been obtained is whether outside influences affecting the community's climate of opinion as to the defendant are so inherently suspect as to result in a probability of unfairness. *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Adami v. State, supra; Bridges v. State, supra.* It is incumbent upon this Court to determine, from all the facts and circumstances, whether appellant was afforded the kind of impartial jury contemplated by *Sheppard v. Maxwell.* This determination can properly be made by considering the answers elicited on the voir dire of the prospective jurors. *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Freeman v. State, supra; Garcia v. State, supra; Morris v. State,* 488 S.W.2d 768 (Tex.Cr.App.1973); *Wallace v. State, supra; Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App.1967); *McIntyre v. State,* 172 Tex.Cr.R. 510, 360 S.W.2d 875 (1962).

Appellant urges that the allegedly "lurid and pervasive" publicity that occurred in Bexar County could have had no other effect than to inspire prejudice against him among potential jurors. The record on voir dire reflects that one hundred and twenty-four prospective jurors were called. Of these, twenty-one were excused for reasons of health, age, or statutory exemption. Seven were excused because of an inability to follow some aspect of the law. Sixty-four were excused because they held established conclusions as to the guilt or innocence of appellant. This fact does not in itself demonstrate the inability of appellant to be tried by an impartial jury. In other cases where a substantial number of veniremen stated on voir dire that they believed the defendant was guilty, this Court has held that identifiable prejudice was nevertheless not shown. *Adami v. State, supra* (18 of 72 veniremen); *Taylor v. State, supra* (39 of 112); *Handy v. State,* 139 Tex.Cr.R. 3, 138 S.W.2d 541 (1940) (45 of 99).

Fifty-four prospective jurors had read of the case in the newspapers, heard of it on television, or both. The mere fact that a venireman has read or heard of a case is not evidence of community prejudice nor is it grounds for disqualification. *Freeman v. States, supra; Knight v. State, supra; Mor-*

ris v. State, supra; McIntyre v. State, supra; Handy v. State, supra.

In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the Supreme Court of the United States recognized that jurors should neither be expected to nor required to be ignorant of the facts and issues involved and that most of those best qualified to serve will have formed some impression as to the merits of the case. See also Freeman v. State, supra; Knight v. State, supra; Clifford v. State, 424 S.W.2d 233 (Tex.Cr.App.1968); Estes v. United States, 335 F.2d 609 (5th Cir. 1964), cert. denied 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1964).

In Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the Supreme Court of the United States upheld the robbery conviction of a defendant who was a notorious jewel thief and convicted murderer. The defendant moved for a change of venue alleging that because of pre-trial publicity the jurors were aware of his prior criminal record and of facts about the crime charged. After examining the testimony elicited on voir dire, the Court sustained the trial court's denial of a change of venue holding that there was demonstrated no such hostility toward the defendant on the part of the jurors who served at trial as would suggest a partiality that could not be laid aside. The Court reached this conclusion despite the fact that some individuals who served on the jury recalled the robbery for which the defendant was being tried and that all of the jurors had knowledge of the defendant's previous crimes. In observing that 20 of 78 potential jurors were excused because of pre-formed opinions as to the defendant's guilt, the Court stated:

"This may indeed be 20 more than would occur in the trial of a totally obscure person, but it by no means suggests a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own."

Finally, the majority distinguished the defendant's trial from those in Irvin v. Dowd, Rideau v. Louisiana, Estes v. Texas, and Sheppard v. Maxwell, in which proceedings were utterly corrupted by press coverage and conducted in a circus-like atmosphere. The trial of appellant in the present case, likewise, holds nothing in common with those earlier cases in which the "courthouse [was] given over to accommodate the public appetite for carnival." 421 U.S., at 799, 95 S.Ct., at 2036.

Contrary to appellant's contention that publicity occurring immediately prior to trial aroused public passions against him, only three panelists said that they had read or heard of the case recently or over an extended period of time. Twenty indicated that the publicity to which they had been exposed occurred at the time of appellant's arrest. Twenty-eight prospective jurors said they had read very little or nothing about the case and many could not recall what it was that they had read. Eight jurors who had been exposed to the media stated that they did not trust the press and placed no credence in what they had read. Noteworthy is the fact that only four individuals stated that they had read or heard a considerable amount of publicity concerning the crime.

Among the twelve who were selected to serve on the trial jury, five stated that they had read nothing about the case. Two of these individuals had not listened to news reports on television. Five of the remaining seven said that they knew of the case but had no opinion about it and were completely uninfluenced by any publicity. Only two jurors indicated that publicity had made some impression on them, but both stated that they could disregard all that they had seen or heard and render a verdict based solely on the evidence presented. The fact that a juror has formed an opinion in the past will not serve to disqualify him if he satisfies the court that he can and will lay aside the opinion he has formed from hearsay or newspaper accounts and base his verdict exclusively on the testimony admitted at trial. Freeman v. State, supra; Adami v. State, supra; Scott v. State, 490 S.W.2d 578 (Tex.Cr.App.1973); Klinedinst

*v. State,* 265 S.W.2d 593 (Tex.Cr.App.1954), *cert. denied* 347 U.S. 933, 74 S.Ct. 534, 98 L.Ed. 1082 (1954).

To demand that a criminal defendant be tried in a community untouched by the news media is to demand that our judicial system function in a fantasy world. As we stated in *Morris v. State*:

> "Our courts cannot and do not operate in a vacuum. Courts deal with people and crimes which are newsworthy. To require a trial of jurors who had never heard of a highly publicized crime would be impractical if not impossible. Certainly, it was never intended that jurors were to be selected from those who did not read newspapers or keep up with current events through other media. Jurors selected from such a group, if there are enough to be called a group, would not be representative. To hold otherwise would be to hold that the perpetrator of a very highly publicized crime such as the assassination of a president, a governor or any widely known person could never be tried." 488 S.W.2d, at 772.

The majority refuses to examine the evidence adduced at the hearing on appellant's bill of exception in order to determine whether the trial court abused its discretion. Yet, if this Court is to consider the record as a whole, it is precisely this evidence which must be reviewed in analyzing whether or not the court's action constituted harmless error. *Davis v. State,* 440 S.W.2d 291 (Tex.Cr.App.1969). At the hearing on the bill of exception, appellant introduced testimony and numerous exhibits demonstrating the existence of considerable publicity in Bexar County concerning the crime. Appellant's exhibits included many newspaper clippings and newsreel films. As has already been noted, however, the mere showing that publicity has occurred does not establish the existence of prejudice. Moreover, the introduction of newspaper clippings and newsreels is insufficient evidence upon which to demand a change of venue without a further showing that by reason of such news accounts a pervasive prejudice has been created.

*Freeman v. State, supra; Creel v. State, supra; Wallace v. State, supra.* Appellant made no such showing. The State's controverting affidavits were sufficient to raise the issue of the ability of appellant's compurgators to assess the degree of prejudice present in the community. Article 31.04, supra; *Mansell v. State, supra.* Yet not one compurgator was called as a witness by the defense. No one testified as to any community prejudice against appellant.

The evidence presented by appellant on the issue of venue stands in marked contrast to the evidence introduced by the defendant in *Adami v. State, supra.* In addition to introducing copies of news stories concerning the crime, the defendant in *Adami* elicited testimony from nine witnesses, almost all of whom had formed their conclusions regarding community prejudice after speaking to between fifty and ninety other individuals residing in the county. *See also Freeman v. State, supra; Ransonette v. State,* 522 S.W.2d 509 (Tex.Cr.App. 1975).

Other facts and circumstances must be taken into consideration in determining whether publicity has rendered the fair and impartial trial of a defendant improbable. In *Morris v. State, supra; Adami v. State, supra;* and *Clifford v. State, supra,* this Court considered it significant that several months intervened between the commission of the offense and the trial of the defendant (ten, seven, and ten months in each case, respectively). In the present case appellant was tried fourteen months after his arrest. None of the jurors or prospective jurors knew the appellant, the victims or any of the witnesses. When appellant was tried, one change of venue had already been granted from Houston, 190 miles away. Bexar County, to which venue was transferred, had a population of over 850,000 individuals and in excess of 333,000 qualified jurors. In *Freeman v. State,* by comparison, the defendant was tried for the highly publicized capital murder of a deputy sheriff in Atascosa County, then populated by only 18,696 persons with 9580 eligible jurors.

In *Johnson v. State,* 467 S.W.2d 247, 251 (Tex.Cr.App.1971), the defendant moved for change of venue because of widely disseminated publicity. The Court wrote:

"In connection with the change of venue contention, it is well to observe that it was shown that Dallas County has a population of over one million persons. This is a far cry from what was before this Court in *Rogers v. State,* 155 Tex.Cr.R. 423, 236 S.W.2d 141, and *Richardson v. State,* 126 Tex.Cr.R. 223, 70 S.W.2d 1003, where the widespread publicity in a sparsely settled county required a change of venue."

Having presented no evidence of pervasive community prejudice, appellant asks this Court to presume its existence. This should not be done. In *Wallace v. State, supra,* we stated:

"[A]nd an inference of prejudice, requiring a change of venue, is not to be drawn from the fact alone that newspapers published in the vicinity have contained articles descriptive of the offense, or editorials denunciatory of the accused, provided the accounts are fair, not inflammatory, and apparently published for the purpose of informing the public of current events. . . ." 458 S.W.2d at 70, quoting 16 Tex.Jur.2d, Criminal Law, Section 246 (1960).

The United States Court of Appeals for the D.C. Circuit conceded in *United States v. Haldeman,* 181 U.S.App.D.C. 254, 559 F.2d 31 (1976), that, in extreme circumstances, prejudice to a defendant's right to a fair trial by a panel of impartial jurors may be presumed because of pretrial publicity. It is difficult to imagine a criminal prosecution attended by more intensive pretrial publicity than was the trial of the three Watergate defendants, H. R. Haldeman, John Erlichman and John Mitchell. Included in the extensive collection of publicity gathered by the defendants were articles hostile in tone and accusatory in nature. Nevertheless, the court found no reason, despite such admittedly massive publicity, to presume that the population of Washington, D. C. was so aroused against the defendants and so unlikely to be able to objectively judge their guilt or innocence that their due process rights were violated by the district court's refusal to grant a change of venue.

A review of the news accounts which appeared in Bexar County reveals that although they reflect a tragic occurrence of great news interest to the public, they appear to be informative, dispassionate and fair.

In *Beck v. Washington,* Mr. Justice Clark states:

"While this Court stands ready to correct violations of constitutional rights, it also holds that 'it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality'." 369 U.S., at 558, 82 S.Ct., at 964, 8 L.Ed.2d at 112, quoting *United States ex rel. Darcy v. Handy,* 351 U.S. 454, 462, 76 S.Ct. 965, 100 L.Ed. 1331 (1956).

The evidence introduced by appellant was insufficient to require a change of venue. Even if the evidence had been presented prior to trial, appellant's motion for change of venue should not have been granted. The refusal to grant a change of venue was harmless.

All of the evidence that appellant wanted to offer before the trial on the merits began is before this Court. It does not show that he was entitled to a change of venue. This case should not be treated differently from other cases where evidence has been excluded because the evidence when later offered shows no reversible error. We should consider substance, not form.

The Supreme Court of Texas in *Fort Worth v. Taylor,* 427 S.W.2d 316 (Tex.1968), followed a similar rule. That Court assumed that the lower court erred in granting a summary judgment because a fact issue was raised but concluded that it should not remand the cause because a different result would not be reached.

No reversible error has been shown. The judgment should be affirmed.

VOLLERS and W. C. DAVIS, JJ., join in this dissent.