**Jeanette HARVEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–93–00157–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 24, 1994.

Decided Oct. 12, 1994.

Bird Old, III, Mt. Pleasant, for appellant.

Charles C. Bailey, Dist. Atty., Mt. Pleasant, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Jeanette Harvey appeals from a conviction for the criminal solicitation of her husband's murder. The trial court assessed punishment at forty years' imprisonment and a $10,000 fine.

Harvey contends that the trial court erred in failing to grant her motion for change of venue, in sustaining the State's objection to testimony offered to demonstrate bias on the part of one of the State's witnesses, and in failing to grant her requested charge regarding the alleged extraneous offense of solicitation, evidence of which was admitted during the punishment phase of the trial.

Shelley Stephenson testified that on June 15, 1990, her mother, Jeanette Harvey, solicited her to kill Jeanette's husband, Kendall Harvey. Stephenson stated that after having an argument with Kendall, who was her stepfather, at the Mount Pleasant Sonic Restaurant, owned by her parents, Stephenson went to Jeanette's house and told Jeanette that she was so angry that she could kill her stepfather. According to Stephenson, Jeanette asked her if she could kill Kendall, discussed Stephenson's financial situation, offered to buy her a house, told Stephenson that she would be better off if Kendall was not there, discussed making the murder look like a robbery, and provided Stephenson with a gun. Stephenson testified that later the same night, she entered Kendall's room with the weapon her mother had given her, but she backed out before committing the crime. Stephenson further testified that she was to be paid by her mother from the proceeds of Kendall Harvey's life insurance policy. Dee Dee Hamilton, a self-professed friend of the defendant, testified that Jeanette admitted to her that she had approached Stephenson concerning killing Kendall and had supplied Stephenson with a weapon but Stephenson had "chickened out."

On December 14, 1990, Kendall Harvey was shot in the back with a small caliber weapon in his driveway. Kendall's death, the ensuing murder investigation, and Jeanette Harvey's arrest for the solicitation of her husband's murder all received considerable publicity in the Mount Pleasant media. At the time of the trial of Jeanette Harvey, no one had been arrested for the murder of Kendall Harvey.

 Harvey first contends that the trial court erred in failing to grant her motion for change of venue. Absent a showing of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful, the trial judge does not abuse his discretion by denying a motion for change of venue. *Phillips v. State,* 701 S.W.2d 875 (Tex.Crim.App.1985). The discretion, however, referred to is a judicial, not a personal discretion. *Dupree v. State,* 2 Tex.Ct.App. 613 (1877). The fact of news media publicity does not by itself establish prejudice or require a change of venue. *Faulder v. State,* 745 S.W.2d 327 (Tex.Crim.App.1987).

 The right to a change of venue is a constitutional right. If it is improbable that

a fair and impartial trial can be given to the defendant, the court may not refuse the motion. *Handy v. State,* 139 Tex.Crim. 3, 138 S.W.2d 541 (1939). The question is not whether it is possible to select a jury whose members were not subject to challenge for cause if the defendant can show that there were influences in the community that would affect the answers on voir dire, or the testimony of witnesses at the trial, or that for any other reason a fair and impartial jury cannot be had. *Henley v. State,* 576 S.W.2d 66 (Tex.Crim.App.1978).

The predominant problem in this case is that Kendall Harvey was killed after the charges were filed against Jeanette Harvey for solicitation. This has the tendency to increase in the minds of the jurors the likelihood that such a solicitation was made by Jeanette Harvey, that it was a serious effort to have her husband killed, and that she likely did have her husband killed, which would call for an increase in her punishment.

At a pretrial change of venue hearing, the defense called twelve witnesses, offered eleven newspaper excerpts, and presented statistical data regarding Titus County. Several defense witnesses testified that they saw media reports regarding Kendall's murder, that they engaged in conversations with others in the community regarding the identity of the murderer, that many in the community felt that Jeanette Harvey was involved in the death of her husband, and that it was frequently said in the community that Jeanette Harvey practiced witchcraft and satanism. Witnesses additionally testified that, in their opinion, Jeanette Harvey could not get a fair trial in Titus County. Teresa Bell, city editor for the Mount Pleasant *Daily Tribune,* testified that she could not recall any case of local origin in the previous year that received the publicity the Harvey murder case received. She also stated that officers in the Titus County Sheriff's Department told her that they believed Harvey killed her husband.

The State presented four witnesses, each of whom testified that they had heard of the Kendall Harvey murder but that, in their opinion, Jeanette Harvey could receive a fair trial in Titus County. In its brief, the State relies most heavily on the voir dire examination of the jury panel as demonstrating that Harvey did in fact receive a trial by an impartial jury. Only six jurors out of a panel of forty-seven were disqualified because they had formed an opinion on the guilt of the accused which could influence their verdict. Three other jurors were excused because they had some relationship with the case itself. The State contends that the fact that the remaining thirty-eight jurors indicated that they had not formed an opinion on the issue of the defendant's guilt demonstrates that the jury panel was, in fact, impartial. The successful qualification of a jury panel is not the sole criterion in determining whether a defendant is entitled to a change of venue. *Henley,* 576 S.W.2d at 72. The primary factor for the court's consideration in ruling on a venue change is whether the outside influences affecting the community's climate of opinion is suspect. *Id.* at 72.

In *Henley,* the court listed several factors relevant in determining whether an outside influence affecting the community climate of opinion as to the defendant is inherently suspect. These factors include: (1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any other factor likely to affect the candor or veracity of the prospective jurors on voir dire. *Id.*

The present case presents an unusual situation: a highly publicized unsolved crime of greater magnitude than the case on trial, so closely connected in time and place to the case on trial and involving the same victim. The evidence from the pretrial change of venue hearing strongly suggests that a large number of people in the community were frequently discussing the Harvey murder case before Jeanette's trial. The local newspaper, the Mount Pleasant *Daily Tribune,*

covered the case extensively, running several front page articles, banner headlines, other news stories, and letters to the editor regarding the case over a period of time of less than a year from Kendall Harvey's murder on December 14, 1992, to the beginning of Jeanette Harvey's trial on November 15, 1993. The defense offered evidence establishing that the Mount Pleasant *Daily Tribune* had a circulation to over 4,400 households in Titus County out of 9,359 households. The evidence shows that a large number of people in the area from which the jury panel was drawn were conversant not only with the charges against Harvey, but also with the subsequent murder of her husband. Harvey also points to the fact that rumors were spread that she practiced witchcraft and satanism as constituting additional information which might reflect upon the attitude of the community toward her. The newspaper articles in evidence indicate that local police officials were very open in speaking with the press regarding the Kendall Harvey murder case.

We recognize that there are few changes of venue granted in Texas, but the taint in the present case is obvious. On the day the jury was selected for this solicitation case, the newspaper headline was, "Jury Selection to Begin in Harvey Murder Trial." The information coming from the sheriff's department was that they could not quite pin it down, but they thought it was the widow who had murdered him. The evidence shows that this prejudice was widespread and was of the type that would be difficult for witnesses and jurors to set aside completely. To say that the jurors in this case could totally disregard Kendall Harvey's murder would be to indulge in a legal fiction which would cast doubt on the fairness of our judicial system. Jeanette Harvey has not been charged with the murder of Kendall Harvey, and she has a right to stand trial on the criminal solicitation of murder charge, free from any underlying prejudices created by the subsequent murder. We find that the trial court abused its discretion in failing to change the venue.

The judgment of the trial court is reversed, and the cause is remanded for a change in venue to another county and new trial.