In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-029 CR


____________________



LONNIE RAYALLEN LABONTE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 00-01-00216-CR






OPINION


 A jury convicted appellant of Capital Murder. The State did not seek death as a
punishment option upon conviction; therefore, an automatic assessment of life in the Texas
Department of Criminal Justice - Institutional Division was rendered by the trial court. 
See Tex. Pen. Code Ann. § 19.03(b) (Vernon 1994); Tex. Pen. Code Ann. § 12.31(a)
(Vernon 1994). Three issues are raised for appellate consideration, viz: 


 The appellant was deprived of his Sixth Amendment right to effective
assistance of counsel.

 The trial court abused its discretion in refusing to change the venue
of the trial.

 The trial court erred in issuing a limiting instruction regarding the
bias of a key state witness.



 At the outset of our analysis of Issue 1, we note that the record indicates appellant
filed a pro se motion for new trial. There is no mention of ineffective assistance of trial
counsel in this motion. There is no indication in the record of either an evidentiary
hearing or a ruling by the trial court regarding this motion. 

 In the recent case of Bone v. State, 77 S.W.3d 828 (Tex. Crim. App. 2002), the
Court framed the issue, in a somewhat woeful tone, as follows:

 We are once again asked whether an appellate court may reverse a
conviction on ineffective assistance of counsel grounds when counsel's
actions or omissions may have been based upon tactical decisions, but the
record contains no specific explanation for counsel's decisions. Once again
we answer that question "no."


Id. at 830. (footnote omitted) Here we are implicitly asked the same question because the
record is absolutely silent as to trial counsel's strategies with regard to the acts or
omissions complained of by appellate counsel. 

 As noted by appellate counsel, the legal standard applicable to appellant's ineffective
assistance claims is set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984). To prevail on his claims, appellant must first show that trial
counsel's performance was deficient. Id., 466 U.S. at 687; Mitchell v. State, 68 S.W.3d
640, 642 (Tex. Crim. App. 2002). Specifically, appellant must prove, by a preponderance
of the evidence, that trial counsel's representation fell below the objective standard of
professional norms. Id. at 642. Second, appellant must show that this deficient
performance prejudiced his defense. Id. As the Court explained in Mitchell, "This means
that the appellant must show a reasonable probability that, but for his counsel's
unprofessional errors, the result of the proceeding would have been different." Id. A
"reasonable probability" is one "sufficient to undermine confidence in the outcome." Id. 
 Appellate review of trial counsel's representation is highly deferential and presumes
that counsel's actions fell within the wide range of reasonable and professional assistance. 
Bone, 77 S.W.3d at 833. Normally, the record on direct appeal will not be sufficient to
show that trial counsel's representation was so deficient and so lacking in tactical or
strategic decision-making as to overcome the presumption that counsel's conduct was
reasonable and professional. Id. As the Court has repeatedly recognized, rarely will the
trial record contain sufficient information to permit a reviewing court to fairly evaluate the
merits of such a serious allegation. See Johnson v. State, 68 S.W.3d 644, 655 (Tex. Crim.
App. 2002) ("The record does not reveal defense counsel's reasons for not objecting [to]
the prosecutor's comments. Given the presumption of effectiveness and the great
deference we give to decisions made by defense counsel, we see nothing in the present
record that would compel us to find counsel ineffective."); Mitchell, 68 S.W.3d at 642,
("Generally the record on direct appeal will not be sufficient to show that counsel's
representation was so deficient as to meet the first part of the Strickland standard. The
reasonableness of counsel's choices often involves facts that do not appear in the appellate
record. A petition for writ of habeas corpus usually is the appropriate vehicle to
investigate ineffective-assistance claims.") (footnote omitted); Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001) ("[A]n appellate court 'commonly will assume a
strategic motivation if any can possibly be imagined,' 3 W. LaFave, et al., Criminal
Procedure § 11.10(c) (2d. ed 1999), and will not conclude the challenged conduct
constituted deficient performance unless the conduct was so outrageous that no competent
attorney would have engaged in it."); Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim.
App. 1999) ("To defeat the presumption of reasonable professional assistance, 'any
allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.'") (quoting McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996)). 

 We have carefully reviewed the lengthy record in the instant case. We find,
contrary to appellate counsel's allegations, that trial counsel's performance was, for the
most part, exemplary. The major complaint as to trial counsel's performance appears to
be that, after having filed pre-trial motions specifically tailored to prevent the State from
mentioning any extraneous offenses committed by appellant, especially involving drugs or
"dealing drugs," trial counsel began his opening statement by admitting that appellant was
a drug user and a drug dealer. Taken in the context of the facts trial counsel apparently
had before him, we certainly cannot say that the decision to be "up front and honest" about
appellant's connection with drugs was an inappropriate trial strategy. The record reflects
that appellant's life, and the lives of several of the key fact witnesses, were saturated with
illicit drug use and drug trafficking. Furthermore, it appears from the record that a co-defendant and key witness, Melissa "Cat" Branon, who had maintained for almost three
years that she was not present at the scene of the murders when they were committed,
changed her story approximately two weeks before appellant's trial began and testified,
under a grant of "use" immunity, that she was present when appellant and the third co-defendant, Russell Wayne Lefleur, confronted the victims at the scene of the crime on the
night of the murders. Because so much of the daily lives of certain key witnesses,
including Ms. Branon, centered so heavily on illicit drug usage and drug dealing, and
because the lives of these individuals were also so intertwined with appellant's life and
daily activities, trial counsel may have felt that openness regarding appellant's involvement
with drugs would desensitize the jury and mitigate any prejudicial effects. Also, since the
type of drug usage and selling by appellant did not involve violence, at least up to the night
of the murders, a reasonable trial strategy would have been to attempt to place the blame
on the only other person who, prior to Ms. Branon, admitted being at the murder scene
at the time of the killings - Gabriel Saxton. The jury was made well aware that Saxton had
pending aggravated assault charges out of Montgomery County. As we are not required
to speculate on trial counsel's actions when confronted with a silent record, we will end
our brief suppositions on trial strategies. 

 The totality of the representation by trial counsel included vigorous and cogent
cross-examination of State's witnesses; a brief, but potentially damaging defense in which
a former friend of Gabriel Saxton testified that Saxton admitted murdering the victims; and
testimony from a DNA serologist for the Texas Department of Public Safety which
impeached prior laboratory results that had indicated a presumptively positive test for the
presence of blood on the truck in appellant's custody at the time of the murders. At the
conclusion of the trial, it was for the jury to determine the credibility, or lack thereof, of
the many witnesses called by the parties. As noted above, many of the State's civilian fact
witnesses had lives tainted by heavy illicit drug use and/or drug dealing. It was for the
jury to decide which parts of the testimony, if any, to believe. The same can be said for
the State's scientific evidence. From our examination of the entire record we find
appellant has failed to prove any deficient performance of his trial counsel with regard to
any of the alleged errors of omission or commission. (1) Appellant's first issue is overruled.

 As for appellate Issue 2, we note that a defendant seeking a change of venue has the
burden to prove the existence of prejudice in the community and that the likelihood of
obtaining a fair and impartial jury is doubtful. See Moore v. State, 935 S.W.2d 124, 129
(Tex. Crim. App. 1996). To satisfy this burden, the defendant must demonstrate an
actual, identifiable prejudice on the part of the members of his jury, which has so
permeated the community that prospective jurors' prejudicial opinions cannot be set aside. 
Id. 

 Courts have held that a change of venue is required only where pretrial publicity is
"so pervasive and prejudicial as to create a reasonable probability that an impartial jury
cannot be empaneled even with the most careful voir dire." Narvaiz v. State, 840 S.W.2d
415, 428 (Tex. Crim. App. 1992). Due process does not, however, require that jurors
come completely ignorant of the facts of the case. Id.; see also Bell v. State, 938 S.W.2d
35, 46 (Tex. Crim. App. 1996). In Penry v. State, 903 S.W.2d 715, 728 (Tex. Crim.
App. 1995), the Court held that knowledge of some details of the case by venire members
was acceptable because of assurances from those members that they could try the case
strictly on the evidence. 

 The trial court conducted a hearing on appellant's change of venue motion. Both
appellant and the State elicited testimony from witnesses that supported their respective
positions on the issue. Appellant introduced into evidence four videotapes containing
reports by the local television media regarding the murders, as well as newspaper accounts
of various events surrounding the subsequent police investigation, the arrests of appellant
and his co-defendants, Russell Wayne Lefleur and Melissa Branon, the pretrial and post-trial coverage of Lefleur's trial, and the pretrial coverage of appellant's trial. The trial
court ultimately denied the motion. 

 We acknowledge the fact that there was extensive media coverage of this case. We
cannot say, however, that the trial court abused its discretion in denying the motion to
change venue. Subsequent to the venue hearing, the parties and the trial court agreed on
a jury selection procedure that was intended to reduce the chance that a biased or
prejudiced member of the community would ultimately serve on the jury. A group of
ninety-eight venire members was initially called and requested to fill out a questionnaire
that had been drawn up by both parties and the trial court. Thereafter, based upon the
answers to certain key questions on the questionnaire, venire members were questioned
individually outside the hearing of the rest of the panel. The key questions were intended
to discover which potential jurors, if any, had heard of the case at all and/or had formed
any opinion as to appellant's guilt. Individuals expressing any prejudicial opinions against
appellant were excused from jury service. The remaining venire members were then
subjected to the standard voir dire proceeding from which the final twelve jurors were
selected. 

 We realize that a successful qualification of a jury panel is no substitute for a
separate and complete hearing on a properly presented motion for change of venue. See
Henley v. State, 576 S.W.2d 66, 71 (Tex. Crim. App. 1978). However, a trial court is
not precluded from utilizing voir dire to help gauge the "community climate of opinion as
to a defendant." Id. There is nothing in the record to indicate the trial court failed to
consider all of the testimony and physical evidence tendered by both parties at the change
of venue hearing. The trial court was also permitted to consider the entirety of the
responses heard during the extended voir dire process, including the written responses
contained in the juror questionnaire. We find no abuse of discretion by the trial court in
denying appellant's motion for change of venue. Appellant failed to carry his burden of
proving the existence of identifiable and pervasive prejudice within the Montgomery
County community such that the likelihood of obtaining a fair and impartial jury was
doubtful. Issue two is overruled.

 Appellant's final issue complains of a limiting instruction given by the trial court
in response to an answer elicited from a State's witness during cross-examination. It is
important to see the context in which the offending response was elicited and trial
counsel's apparent basis for asking the question, as well as what is argued to us on appeal. 
The record reflects that the witness being cross-examined was Joseph E. Sclider of the
Montgomery County Sheriff's Department. Detective Sclider was one of the investigators
in connection with the murders. Trial counsel was questioning Detective Sclider on
various aspects of the criminal investigation into the murders when the following exchange
took place: 

 Q.[Appellant's Trial Counsel]: In your investigation, you have determined
that Gabriel Saxton is a convicted felon; is that correct?


 A.[Det. Sclider] Yes, sir, he is.


 Q. You have found through your investigation that he's under indictment in
Montgomery County - - 


 [State]: Objection, Your Honor. 


 Q.(By [Trial Counsel]) - - for the offense - - 


 [State]: Objection. Your Honor. May we approach?


 THE COURT: Yes. Approach.


 (AT THE BENCH, ON THE RECORD)


 [State]: It is inappropriate "under indictment." He has got to be
convicted.


 THE COURT: Sustained.


 [Trial Counsel]: I disagree, Your Honor. The case law is replete with
the fact that if somebody is under indictment for a felony, that it goes to the
credibility of that witness; and I have to - - I have the right to bring out
anything that has to do with his credibility. And one of them is bias in plea
bargaining.


 THE COURT: Well, actually - - 


 [State]: There is - - 


 THE COURT: If he were on the stand and you were crossing him,
the only thing that I'm aware of you can ask him about is final convictions
of a felony or a misdemeanor involving moral turpitude, but I'm looking. 
What rule would you cite me to that would allow in - - 


 [Trial Counsel]: It goes to the credibility of the witnesses and my right
to impeach those witnesses. 


 [State]: Impeach.


 The record indicates that this discussion continued with the trial court ultimately
overruling the State's objection and addressing the jury as follows: 

 THE COURT: Ladies and gentlemen, I'm going to overrule the
objection at this time, but I'm going to give you an instruction and you need
to listen to me very carefully.

 There has been a couple times alluded to or stated that Mr. Gabe
Saxton has been indicted for aggravated assault. At this point in the trial,
I'm instructing you that any reference to that is not to be considered by you
for the truth of the statement that he may or may not have been indicted. 
I'm not allowing that in at this point as a truth or as a fact whatsoever. 
You're not to consider it as true.

 What I'm allowing it in for is to go to the state of mind of this
investigator, this witness, and how he was investigating the case with respect
to the entire - - entirety of the case; not that it was true or not true. I'm not
allowing it in for that at all, but only to the extent that counsel wants to
inquire what was in this gentleman's state of mind as he continued his
investigation.

 Okay. Let's move along.


 Appellant's argument is framed in the following manner: 

 Here the evidence that Mr. Saxton had been indicted was offered for
a proper purpose - to show his bias as a State witness. The law allows such
evidence. Rule 613(b). The trial court then limited the jury's consideration
of the indictment to an improper purpose, that of showing the investigator's
state of mind. A new trial is required.


 The fact that the same evidence was later admitted without a limiting
instruction is of no consequence. When the trial court gave the limiting
instruction regarding Mr. Saxton's indictment, the instruction said "any
reference to that is not to be considered by you for the truth of the statement
that he may or may not have been indicted."


(emphasis in original) (record references omitted) (citations omitted).

 Appellant's argument to us, as was trial counsel's argument to the trial court, is
correct as a general statement of law, but both arguments fail to recognize that the witness
at the time was Detective Sclider, not Gabriel Saxton. Had Saxton been on the witness
stand, then trial counsel would have had a very strong argument in an attempt to use the
pending indictment for aggravated assault out of Montgomery County to show a possible
bias on Saxton's part for testifying favorably to the State's theory of the case. See Maxwell
v. State, 48 S.W.3d 196, 199-200 (Tex. Crim. App. 2001); Carroll v. State, 916 S.W.2d
494, 499-501 (Tex. Crim. App. 1996); Tex. R. Evid. 607, 613(b). Since Detective
Sclider was the witness, appellant could not impeach Saxton through Sclider. 

 Additionally, even had Saxton been the witness and trial counsel had been permitted
to impeach him with his pending aggravated assault charge, such testimony is without
probative value, cannot be considered as substantive evidence by the factfinder, and is
subject to an appropriate limiting instruction. See Goodman v. State, 665 S.W.2d 788,
792 n.2 (Tex. Crim. App. 1984); DeLeon v. State, 77 S.W.3d 300, 313 (Tex. App.--Austin 2001, pet. ref'd). Although appellant prefers a different emphasis, we find the trial
court correctly worded the instruction to the particular circumstances occurring at the time. 
The trial court expressly limited his instruction by using phrases such as "[a]t this point
in the trial," "at this point," and further limited the testimony to "this witness." As noted
earlier in this opinion, both the State and appellant later elicited from Saxton that he was
indeed facing pending aggravated assault charges. We conclude the trial court did not err
in providing the limiting instruction at the point in the trial at which it was given. Issue
three is overruled. The judgment and the sentence of the trial court are affirmed.

 AFFIRMED.


 ______________________________

 STEVE MCKEITHEN 

 Chief Justice 


Submitted on February 6, 2003

Opinion Delivered February 19, 2003

Publish


Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. With regard to appellate counsel's allegation that trial counsel failed to object to
incriminating and prejudicial questions and answers during the polygraph interview, we
find that trial counsel did indeed object. The record indicates that trial counsel was very
insistent that the jury not be made aware that any portion of the police interview of
appellant was related to a polygraph examination. The trial court agreed, and a
"sanitized" version of the police interview eliminating any reference to the polygraph
examination was admitted before the jury. In sub-parts "c" and "d" of Issue 1, appellate
counsel fails to specify how these isolated instances, in the context of the entire trial
record, could be proven to be deficient performance which reasonably would have led to
appellant's acquittal. The substance of the complaint made in sub-part "e" will be
discussed under our analysis of Issue 3.