

# NUMBER 13-15-00297-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DANIEL GARCIA,                                                                              Appellant,

v.

THE STATE OF TEXAS,                                                                        Appellee.

## On appeal from the 214th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

Appellant Daniel Garcia was convicted of capital murder and aggravated assault and sentenced to life without parole and seventy-five years, respectively, in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. §§ 19.03, 22.02 (West, Westlaw through 2017 1st C.S.). Garcia complains that: he

was deprived of his right to confront and cross-examine a witness (issue 1); he was entitled to a lesser-included offense instruction (issue 2); the trial court erred in failing to "instruct the jury to find the capital circumstance, robbery, beyond a reasonable doubt" (issue 3); the trial court erred in denying his motion for change of venue (issue 4); the trial court erred by admitting evidence of prior convictions at the punishment phase without "approving the oral stipulation of evidence in writing" (issues 5, 7, and 8); the jury charge contained an erroneous definition of assault (issues 6 and 9); the trial court's ruling allowing an out-of-court statement contributed to his waiver of his right against self-incrimination (issues 10 and 11); and there is insufficient evidence to support his aggravated assault conviction (issue 12). We affirm.

## I.  BACKGROUND

The State alleged that on or about April 14, 2014, Garcia, along with his girlfriend Del Victoria Cavazos and his friend Arturo Navarro, planned to rob Tim's Market in Corpus Christi, Texas. According to the State, Garcia, Navarro, and Cavazos drove to the store together. When they arrived, Cavazos went into the store to see who was inside and purchased a bag of chips. Cavazos then left the store and reported to Garcia and Navarro that a man and a woman were working in the store. Garcia, armed with a rifle, and Navarro, armed with a knife, entered the store and demanded the money from the store's owner, Mostafa Bighamian, and Amanda Rodriguez, Bighamian's daughter.

Bighamian refused to give Garcia and Navarro the money and instead reached into a nearby drawer for his pistol. Rodriguez testified that when her father reached for his pistol, Garcia fired a shot toward the back window. Bighamian then indicated to Rodriguez to follow his lead and duck below the counter. As they ducked, Rodriguez

2

heard a loud bang and saw her father hit the floor. Navarro immediately fled the store. Rodriguez said that Garcia then pointed the gun at her and demanded the money. Rodriguez told him to "take whatever" he wanted and leave.

Garcia fled the store. A witness, Joseph Wilburn, had stopped at an intersection near the store at the time of the incident. Wilburn testified that he saw someone run from the store carrying a rifle. He assumed that the store had been robbed. Wilburn observed a red car "peel out" from behind the store and he decided to follow it. Once Wilburn saw where the car parked, he returned to the store to tell the police what he had seen.

The police located the vehicle outside of Garcia's residence, where Wilburn had indicated. As Corpus Christi Police Officer Jerry Neal waited for back-up outside of Garcia's residence, Garcia, Cavazos, and Navarro exited the home. Officer Neal instructed the three individuals to sit down on the curb until the other officers arrived. Upon inspection of Garcia's vehicle, Officer Neal observed a knife, a gray handkerchief, and a bag of chips. Garcia and Cavazos gave the officers permission to search the property and his residence. The officers located a rifle in the garage.

After being arrested and transported to the police station, Cavazos and Navarro admitted their involvement in the crime. Garcia also confessed to the detectives in his interview, explaining that the robbery was his idea and he recruited Cavazos and Navarro to join him. Garcia did not deny shooting Bighamian, but he did deny intentionally killing him.

After a jury trial, Garcia was found guilty of capital murder and aggravated assault and he was sentenced to life imprisonment without the chance of parole and seventy-five years, respectively.

## II. LEGAL SUFFICIENCY

We begin by addressing Garcia's twelfth issue, in which he contends that the evidence was legally insufficient to support his conviction for aggravated assault.

### A. Standard of Review and Applicable Law

When addressing a sufficiency challenge, we review the evidence in the light most favorable to the jury's verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We give deference to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony and is free to accept or reject any or all evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997) (en banc). A person commits aggravated assault if he intentionally or knowingly threatens an individual with imminent bodily injury, and uses or exhibits a deadly weapon during commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2).

### B. Analysis

Garcia argues that the evidence was insufficient to convict him

4

"[B]ecause no one identified [Garcia] in open court as the actor, [Garcia's] statement does not address the aggravated assault, the co-defendant's two statements do not mention the aggravated assault, and the evidence presented does not warrant a rational inference that [Garcia] was the one who pointed a firearm at Amanda Rodriguez, since there were two persons who entered the store, not just one."

We disagree.

The evidence presented to the jury showed that Garcia went into the store armed with a rifle, to which Garcia confessed in a recorded interview played for the jury. Garcia also stated in his confession that his partner in the crime, Navarro, was only armed with a knife. Garcia admitted to being the one who shot Bighamian. When Rodriguez testified, she referred to Garcia numerous times as the defendant and explained that he pointed his gun at her. Rodriguez did not physically identify Garcia in court, though she did state that he was present in the court room. If other evidence shows that a defendant was the perpetrator of a criminal offense, the failure of the complainant to make a positive in-court identification does not make the verdict improper. *Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.—Dallas 1991, no pet.). The evidence presented, including the combination of Garcia's confession and Rodriguez's testimony, was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Garcia was the gunman who pointed his weapon at Amanda. *Conyers v. State*, 864 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Accordingly, Garcia's twelfth issue is overruled.

### III.   OUT-OF-COURT STATEMENTS

By his first, tenth, and eleventh issues, Garcia complains that the trial court erred in admitting Cavazos's out-of-court statements to police. In his first issue, he argues that he was deprived of his right to cross-examine Cavazos, and in his tenth and eleventh

5

issues he argues that by allowing the out-of-court statement to be admitted, the trial court "compel[ed] [his] waiver of his rights not to be a witness against himself."

## A. Standard of Review and Applicable Law

The United States and Texas Constitutions provide that an accused has the right "to be confronted with the witnesses against him" in a criminal prosecution. U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, § 10. Consistent with this guarantee, a testimonial hearsay statement may be admitted in evidence against a defendant "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). The Confrontation Clause applies only to "witnesses" against the accused—that is, those who "bear testimony." *Crawford*, 541 U.S. at 51. "Testimony" is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*.

The primary focus in determining whether a hearsay statement is "testimonial" is upon the objective purpose of the interview or interrogation, not upon the declarant's expectations. *De La Paz*, 273 S.W.3d at 680 (citing *Davis v. Washington*, 547 U.S. 813, 822–23 (2006)); *see King v. State*, 189 S.W.3d 347, 358–59 (Tex. App.—Fort Worth 2006, no pet.) ("The legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant."). Testimonial statements certainly include testimony at preliminary hearings, before grand juries, and at former trials, as well as statements elicited during police interrogations. *Crawford*, 541 U.S. at 51. Whether a statement is

testimonial is a question of law that we review de novo. *De La Paz*, 273 S.W.3d at 680 (citing *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006)).

"If there is one theme that emerges from *Crawford*, it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admissibility of hearsay statements." *United States v. Cromer*, 389 F.3d 662, 679 (6th Cir. 2004). The constitutional requirement that a testimonial statement be subject to cross-examination in criminal cases "does not evaporate when testimony happens to fall within some broad modern hearsay exception, even if the exception is sufficient in other circumstances." *Crawford*, 541 U.S. at 56 n.7. Thus, under *Crawford*, the Confrontation Clause analysis will usually turn on the question of whether a particular statement is testimonial or nontestimonial in nature. *See Davis v. State*, 169 S.W.3d 660, 668 (Tex. App.—Austin 2005), aff'd, 203 S.W.3d 845 (Tex. Crim. App. 2006).

If the statement is found to be testimonial, and the defendant did not have the opportunity to cross-examine the declarant, there has been a constitutional error and a harm analysis must be performed. *See Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). Rule 44.2(a) of the Rules of Appellate Procedure provides that an appellate court "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). A constitutional error does not contribute to the conviction if the verdict "would have been the same absent the error." *See Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). We must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v.*

*State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001); *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006). While our review must focus on the error and its effect, "the presence of other overwhelming evidence that was properly admitted which supports the material fact to which the inadmissible evidence was directed may be an important factor in the evaluation of harm." *Wall*, 184 S.W.3d at 746 (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). The following factors are relevant when determining if the constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt: (1) how important was the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Scott*, 227 S.W.3d at 690 (citing *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006)).

**B.** **Analysis**

Garcia's complaint stems from the testimony of two witnesses, Officer Heleodoro Cantu and Officer Alexandra Molina. Both witnesses testified regarding out-of-court statements made by Cavazos.

**1.** **Officer Cantu**

Corpus Christi Police Officer Cantu is a member of the Fugitive Task Force with the U.S. Marshals. As part of the task force, he is involved with violent crimes such as robbery, murder, and aggravated assault. On the day of the incident, Officer Cantu and his partner were near Tim's Market when they saw and heard several officers responding to the area. Over the radio, they heard there was a robbery at Tim's Market and decided to respond. Officer Cantu said that he and his partner were on their way to the store when

8

they heard a description of the suspect's vehicle and proceeded to look for the vehicle. During their search, they received a call from Officer Neal that he had located the potential vehicle, and they responded to the location. When Officer Cantu arrived, Garcia, Navarro, and Cavazos were already outside. Officer Cantu was given permission by Garcia to search the house. After a search of the house and the car, Officer Cantu said the suspects were separated so the officers could speak to each individual separately. Officer Cantu spoke with Cavazos.

During his testimony, Garcia's counsel objected to several statements about what Cavazos told Officer Cantu, arguing that they were hearsay. However, Garcia did not object to Officer Cantu's testimony about his conversation with Cavazos on Confrontation Clause grounds, and therefore did not preserve error on these grounds. *See* TEX. R. APP. P. 33.1(a); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause grounds."). Therefore, to the extent that Garcia challenges Officer Cantu's statements on Confrontation Clause grounds, he has failed to preserve his argument.

### 2. Officer Molina

Officer Molina is a patrol officer with the Corpus Christi Police Department who testified regarding her involvement with the investigation. She came to the scene of Garcia's house after Officer Neal requested backup. When she arrived on the scene, Garcia, Navarro, and Cavazos were outside and were being asked to sit on the curb. Officer Molina explained that in her opinion, it appeared Cavazos was very nervous. Officer Molina spoke directly with Cavazos at the scene.

9

Garcia's counsel initially objected to statements by Cavazos on grounds of hearsay. In stating his objection, Garcia's counsel stated, "I don't have a right to cross-examine [Cavazos] . . . " but argued that "[w]hatever [Officer Molina] gathers as information is going to be gathering [sic] as pursuant to hearsay and I don't see an exception on that issue." The trial judge overruled the objection when the State argued that the statement was an admission against interest, an exception to the hearsay rule. *See* TEX. R. EVID. 803(24). Later in her testimony, Officer Molina began to testify regarding Cavazos's admissions to her. Counsel for Garcia again objected, but this time stated, "this is hearsay, again, on a cross-examination issue, that's going to be one, I cannot call that defendant." Again, the trial court overruled the objection after the State raised the hearsay exception of admission against interest.

After Officer Molina testified, there was a discussion outside of the jury's presence. Counsel for Garcia argued that allowing the testimony over his hearsay objection created a "blame shifting" issue . He also argued that "it's affecting the right to cross-examine the co-defendant. It's a violation of the Constitution." The trial court accepted cases from Garcia in support of his contention that Officer Molina's testimony should not have been allowed, including hearing argument about the Confrontation Clause dealing with the right to cross-examine.

Assuming but not deciding that Garcia preserved his Confrontation Clause issue with respect to Officer Molina, we next address whether the statements made by Cavazos as testified to by Molina, were testimonial. *See De La Paz*, 273 S.W.3d at 680.

Officer Molina testified that Cavazos admitted her participation in the robbery of Tim's Market. Cavazos also told Officer Molina about Garcia and Navarro's involvement,

10

including their use of weapons, specifically the gun and knife. In determining whether a statement is testimonial, we look to determine whether "the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Here, the police were present in Garcia's home, where Cavazos also lived, the police were searching the premises, and they had separated Cavazos, Garcia, and Navarro to question them. Cavazos then admitted her involvement as well as that of Garcia and Navarro to the officers. Once this information was received by Officer Molina, the police located the weapons and arrested Cavazos, Garcia, and Navarro. The information gathered from Officer Molina's interview with Cavazos was to establish what, if any, involvement Cavazos had in the incident at Tim's Market. We conclude the statement was testimonial. Because the statement was testimonial and put to evidentiary use for the truth of the matter asserted, and because the State has not shown that Cavazos was unavailable to testify at trial and that Garcia had a prior opportunity to cross-examine her, admission of the statement over Garcia's objection violated his Sixth Amendment right to confrontation. *See id.* at 581–82.

The Texas Court of Criminal Appeals has described how appellate courts should undertake a harm analysis under *Crawford*:

> In determining specifically whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt . . . the following factors are relevant: (1) how important was the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. As the court of appeals rightly noted, the emphasis of a harm analysis pursuant to Rule 44.2(a) should not be on "the propriety of the outcome of the trial." That is to say, the question for the reviewing court is not whether the jury verdict was supported by the

11

evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, inter alia, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

*Id.* at 582 (citing *Scott*, 227 S.W.3d at 690–91 (footnotes and quotation marks omitted in original)).

Cavazos's statements to Officer Molina amounted to a confession of her own involvement and an implication of the involvement of Garcia and Navarro. Most importantly, the State presented Garcia's recorded police interview to the jury, without objection. Notably, during the recorded interview, the detectives informed Garcia that both Cavazos and Navarro confessed and implicated him in the robbery and murder at Tim's Market. Garcia subsequently confessed that he went in the store with the intent to rob Baghamian, not to murder him, but that Baghamian pulled out a pistol and Garcia's first reaction was to "pull the trigger" to scare Baghamian. Multiple times in the video Garcia admits that "[he] did it" and he was "guilty as charged." He admits that he went to the store because he thought he could get away with robbing the store, but that it "went bad." He admitted that he also sent Cavazos into the store to see who was inside and that Navarro went in with him carrying a knife. He was hoping it would be "in and out quick." He repeats that he did not intend to shoot, but that "he did it." Garcia's confession

12

not only corroborated the out-of-court statements made by Cavazos, it was also cumulative of what she said.

Furthermore, the State presented evidence that the murder weapon was located in Garcia's garage. The State's firearms examiner testified that the bullet fragment found in the body of Bighamian was consistent with being fired from Garcia's gun, strengthening the State's case. Excluding the out-of-court statements by Cavazos, the evidence presented to the jury showed that Garcia confessed to the shooting, that he intended to rob the store because he needed the money, and that the gun the police found in Garcia's garage proved to be the same one used to shoot Baghamian. The State did not rely on or emphasize Cavazos's out-of-court statements in its closing argument.

After carefully reviewing the record, we hold that the trial court's error in admitting Cavazos's out-of-court statements through Officer Molina did not contribute to appellant's conviction or punishment and was harmless beyond a reasonable doubt. *See* TEX. R. APP. P. 44.2(a). The statements made by Cavazos were cumulative of other evidence, were corroborated on material points, were not vital to the State's case, and were not emphasized by the State. Garcia's first issue is overruled.

### 3. Garcia's Waiver of His Fifth Amendment Rights

In his tenth and eleventh issues, Garcia argues that admission of Cavazos's out-of-court statements contributed to his waiver of his right against self-incrimination because he was "compelled" to testify in order to respond to the statements. Garcia, however, never raised any issue in the trial court relating to his waiver of his Fifth Amendment rights or his analogous rights under the Texas Constitution, nor did he inform the court that the reason he was testifying was to rebut or explain the hearsay evidence

13

offered by the State. *See Davis*, 203 S.W.3d at 855. Garcia now argues on appeal that Cavazos's out-of-court statements established motive to his crime that he had to rebut. However, his testimony corroborates Cavazos's statements, it does not rebut them.

The following exchange occurred during Garcia's direct examination:

[Garcia's Counsel]: All right. So around nine o'clock y'all get together. What happens next?

[Garcia]: I wanted money. I wanted to get high.

[Garcia's Counsel]: Had you run out of money?

[Garcia]: Yes.

[Garcia's Counsel]: How long had you been without any money?

[Garcia]: That morning.

[Garcia's Counsel]: Was your mom around?

[Garcia]: No.

[Garcia's Counsel]: So you needed money. What—what's the next part of what you did?

[Garcia]: I—I told them, "Let's go rob [Bighamian]," the store.

Garcia argues that Cavazos's statement created a "motive which was not otherwise available from the rest of the evidence." As previously discussed, Garcia's confession was admitted without objection, which provided the same information regarding motive provided by Cavazos. Garcia did not present any argument regarding his right not to testify in the trial court, and his testimony both corroborated and elaborated on Cavazos's out-of-court statements. Furthermore, Garcia's argument requires this Court to speculate as to how the parties' trial strategy and tactics might have been different had the trial court made different evidentiary rulings. Just as we may not speculate as to the possible

14

efficacy of cross-examination had it occurred, we cannot speculate as to whether Garcia would have testified had the trial court disallowed Officer Molina's testimony concerning Cavazos's statements. *See id*. Accordingly, we overrule Garcia's tenth and eleventh issues.

## IV.    JURY CHARGE ERROR

In his second issue, Garcia complains that the trial court erred by not instructing the jury on the lesser-included offense of manslaughter. In his third, sixth, and ninth issues Garcia complains of error in the jury charge.

## A.    Lesser-Included Instruction

The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis. *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011).

> The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. We must compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. Because a defendant cannot be held to answer a charge not contained in the indictment brought against him, the evidence produced at trial does not determine the lesser-included offenses.
>
> The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. We review all of the evidence presented at trial.

*Id.* at 68 (internal citations and quotations omitted). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser-included-offense charge. *Id*. Although a scintilla of evidence is a low threshold, "it is not enough that the jury may disbelieve some crucial evidence pertaining to the greater offense, but rather, there must

15

be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Id*. (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). This standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations. *Id*.; *see also Smith v. State*, 522 S.W.3d 628, 635 (Tex. App.—Houston [14th Dist.] 2017, pet. granted).

On count one, Garcia was charged with capital murder for intentionally causing the death of an individual in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (West, Westlaw through 2017 1st C.S.). The trial court's proposed jury charge included an instruction on capital murder and an instruction on the lesser offense of felony murder based on the underlying offense of robbery. *See id.* §§ 19.02(b)(3), 29.02 (West, Westlaw through 2017 1st C.S.); *see also Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004) (finding that felony murder and murder are lesser-included offenses of capital murder). At the charge conference, Garcia requested additional instructions on the lesser-included offenses of murder and manslaughter. The court denied the requests. Despite the option of convicting on the lesser-included charge of felony murder, the jury found Garcia guilty of capital murder. On appeal, he challenges only the denial of his request for a manslaughter instruction.

"Felony murder is an unintentional murder committed in the course of committing a felony while capital murder includes an intentional murder committed in the course of robbery." *Threadgill*, 146 S.W.3d at 665. A "jury's failure to find an intervening lesser offense (one that is between the requested lesser offense and the offense charged) may,

16

in appropriate circumstances, render a failure to submit the requested lesser offense harmless." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005) (citing *Saunders v. State*, 913 S.W.2d 564, 572 (Tex. Crim. App. 1995) (en banc)).  While the existence of an instruction regarding an intervening lesser offense does not automatically foreclose harm—because in some circumstances that intervening lesser offense may be the least plausible theory under the evidence—a court can conclude that the intervening offense instruction renders the error harmless if the jury's rejection of that offense indicates that the jury legitimately believed that the defendant was guilty of the greater, charged offense.  *See Masterson,* 155 S.W.3d at 171–72; *see also Tennell v. State*, No. 01-17-00571-CR, 2018 WL 6843779, at *6 (Tex. App.—Houston [1st Dist.] Dec. 31, 2018, pet. filed) (mem. op., not designated for publication).

Garcia argues that the failure to include an instruction on manslaughter harmed him by not allowing the jury to convict on a lesser included offense, and thus his sentence was higher than it otherwise would have been.  However, the jury's conviction of Garcia for capital murder, despite the availability of felony murder, indicated that the jury did in fact believe that Garcia harbored the necessary specific intent required for the charged offense.  *See Masterson*, 155 S.W.3d at 172; *see also Tennell*, 2018 WL 6843779 at *6.  Accordingly, even if it were error for the trial court to deny his request for a lesser-included offense, we find no harm.  *Masterson*, 155 S.W.3d at 172.; *see* TEX. R. APP. P. 44.2(a).  Garcia's second issue is overruled.

## B.    Charge Error

By his third issue, Garcia argues that the trial court erred by failing "to instruct the jury to find the capital circumstance, robbery, beyond a reasonable doubt."  He also

17

complains of jury charge error in his sixth and ninth issues, contending that egregious harm resulted from the definition of assault requiring more proof than required by statute.

As to the capital murder count, the trial court's charge instructed the jury:

Now if you find from the evidence beyond a reasonable doubt that DANIEL GARCIA, defendant, on or about APRIL 14, 2014, in Nueces County, Texas, did then and there intentionally cause the death of an individual, Mostafa Bighamian by shooting Mostafa Bighamian with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of Robbery of Mostafa Bighamian, then you will find the defendant DANIEL GARCIA, guilty of Count 1: Capital Murder as charged in the indictment[.]

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you shall next consider the lesser included offense of Murder.

Our analysis first requires an initial determination of whether error actually exists in the charge. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc). Only if we find error do we proceed to the second step that requires examination of harm resulting from the error. *Olivas*, 202 S.W.3d at 143–44; *Almanza*, 686 S.W.2d at 171. In analyzing error, we should first determine if the defendant objected to the contended erroneous charge. *Almanza*, 686 S.W.2d at 171. If he did not, then he must show that he suffered "egregious harm." *Id*. "This is a high and difficult standard which must be borne out by the trial record." *Young v. State*, 283 S.W.3d 854, 880 (Tex. Crim. App. 2009) (per curiam).

Garcia did not object to the court's instructions and therefore he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. Garcia contends, in his third issue, that "[t]he foregoing instruction presents egregious harm because it does not set out the standard by which the jury must find that the killing took place during a robbery," without citation to any authority. While he also presents an alternative instruction to the one used

18

in the trial court's charge, he again cites no authority. It is incumbent upon appellant to cite specific legal authority and to provide legal arguments based upon that authority. *Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002) (en banc); *see* TEX. R. APP. P. 38.1(i). This Court has no obligation to construct and compose a party's issues, facts, and arguments with appropriate citations to authorities and to the record. *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). Nevertheless, as we understand the limited argument presented in Garcia's brief, he focuses his attention on whether the trial court should have included a requirement that the jury find that Garcia committed or attempted to commit robbery beyond a reasonable doubt. However, the State presented specific references to the record, the evidence presented, the argument of counsel, and the jury charge to argue that the jury was instructed that they would need to find Garcia guilty of robbery beyond a reasonable doubt before they could find him guilty of capital murder. *See Almanza*, 686 S.W.2d at 171 ("[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole."). Garcia does not direct this Court to any authority that would support his contention that there was jury charge error as it relates to his third issue. *See* TEX. R. APP. P. 38.1(i). As such, we overrule his third issue.

In his sixth and ninth issues, Garcia contends that "egregious harm result[ed] from a definition of assault erroneously requiring more proof than required by" statute. Garcia argues that the jury charge stated "[a] person commits the offense of assault if he intentionally, knowingly, or recklessly causes or threatens imminent bodily injury with a

19

deadly weapon," and that the inclusion of "a deadly weapon" goes against the statute for assault. *See* TEX. PENAL CODE ANN. § 22.01 (West, Westlaw through 2017 1st C.S.). While Garcia is correct that the statutory offense of assault does not require a finding of a deadly weapon, we find no harm. Here, Garcia did not object and therefore egregious harm must be shown. *See Almanza*, 686 S.W.2d at 171. The jury convicted Garcia of aggravated assault, even when presented with the availability of a lesser-included offense. In the aggravated assault instruction, the jury was required to find that Garcia used or exhibited a deadly weapon. Having convicted Garcia of aggravated assault, the jury clearly believed, as Garcia admitted that he did, that Garcia used or exhibited a deadly weapon. As in our discussion above, the jury's conviction of Garcia for aggravated assault, despite the availability of the lesser-included offense of assault, indicated that the jury did in fact believe that Garcia used or exhibited a deadly weapon as required for the charged offense. *See Masterson*, 155 S.W.3d at 172; *see also Tennell*, 2018 WL 6843779 at *6. Accordingly, we overrule Garcia's sixth and ninth issues.

## V. CHANGE OF VENUE

By his fourth issue, Garcia argues that the trial court erred by failing to grant his motion to transfer venue.

### A. Standard of Review and Applicable Law

For an accused to receive a fair trial consistent with due process of law, the jury must determine his guilt or innocence on the basis of the evidence admitted at trial and not on the basis of other facts or allegations appearing in the media. *Narvaiz v. State*, 840 S.W.2d 415, 428 (Tex. Crim. App. 1992) (en banc). Mere juror exposure to news accounts of the crime does not, by itself, raise a presumption the defendant was deprived

20

of due process and cannot receive a fair trial by an impartial jury. *Murphy v. Florida*, 421 U.S. 794, 799 (1975); *Russell v. State*, 146 S.W.3d 705, 710 (Tex. App.—Texarkana 2004, no pet.). Due process does not require that jurors be completely ignorant of the facts of the case. *Narvaiz*, 840 S.W.2d at 428.

A trial court may change venue upon a showing that there exists so great a prejudice against the defendant in the county where the prosecution is commenced that he cannot obtain a fair and impartial trial. TEX. CODE CRIM. PROC. ANN. art. 31.03(a)(1) (West, Westlaw through 2017 1st C.S.). In determining whether a defendant is entitled to a change of venue when prejudicial pretrial publicity exists, the test required by due process is whether the defendant can receive a trial by an impartial jury free from outside influences, or whether there is a reasonable likelihood the pretrial publicity would prevent a fair trial. *Adami v. State*, 524 S.W.2d 693, 703–04 (Tex. Crim. App. 1975); *Russell*, 146 S.W.3d at 710. Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial. *Henley v. State*, 576 S.W.2d 66, 71 (Tex. Crim. App. 1978) (en banc); *Russell*, 146 S.W.3d at 710.

To obtain a change of venue based on great prejudice, the defendant "bears a heavy burden to prove the existence of such prejudice in the community, that the likelihood of obtaining a fair and impartial trial jury is doubtful." *Renteria v. State*, 206 S.W.3d 689, 709 (Tex. Crim. App. 2006). We look to several factors to determine "whether outside influences affecting the community climate of opinion as to a defendant are inherently suspect":

21

(1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire.

*Henley*, 576 S.W.2d at 71–72.

The standard of review on appeal from a ruling on a motion for change of venue is "abuse of discretion." *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). If the trial court's decision concerning a motion for a change of venue falls within the zone of reasonable disagreement, it will be upheld. *Id.*

## B. Analysis

Garcia contends that the pretrial publicity was so adverse that he could not obtain a fair trial in Nueces County, Texas. In his argument, he states: "[Bighamian], the deceased, was a hometown hero. The community put up murals celebrating him. The hometown newspaper covered the story extensively. Many people came to the store on news of the shooting."

At the hearing on the motion for change of venue, Garcia presented news coverage of a mural honoring Bighamian's memory. Garcia also presented several witnesses, several of whom are public officials, who were present at the unveiling of the mural. Each of the witnesses testified that a mural was unveiled to honor Bighamian and that there were approximately 100 people or less in attendance. Each of the witnesses also testified that they did not believe this mural or any media coverage would have prejudiced Garcia in Nueces County because the mural was intended to be an honor for the family, not a rally against Garcia. Lastly, Garcia presented testimony from Kenneth

22

Botary, a criminal defense attorney. Botary testified that he believed that pretrial publicity could prejudice a criminal defendant, and that in this case, there was a lot of pretrial publicity. Botary testified that even if the jurors state that they can be impartial, it is unlikely that that is the case. The State did not present any witnesses and instead relied on its filed affidavits. The trial court denied the motion for change of venue.

The trial court heard testimony from four witnesses, three of whom undoubtedly believed that Garcia could receive a fair trial in Nueces County. In both of the affidavits provided by the State, the witnesses asserted that Garcia could receive a fair trial. Garcia argues that the affidavits provided by the State needed to "attack the credibility" of Garcia's witnesses and "attack the means of knowledge of" Garcia's witnesses, but he provides no authority for such an assertion. Affidavits stating that the defendant could receive a fair trial in the county may be sufficient to controvert the affidavits in support of a motion for change of venue. *See Lundstrom v. State*, 742 S.W.2d 279, 286–87 (Tex. Crim. App. 1986) (en banc) (op. on reh'g); *see also Arochi v. State*, No. 05-16-01208-CR, 2018 WL 3372919, at *17 (Tex. App.—Dallas July 11, 2018, pet. ref'd) (mem. op., not designated for publication). We conclude the trial court acted within its discretion in denying the motion to change venue because the publicity was not pervasive. While there was evidence of media coverage of this case and the unveiling of a mural in honor of the deceased, there was no evidence the publicity was so pervasive it affected appellant's right to a fair trial. While a lack of pervasiveness is enough to sustain the trial court's ruling, we further conclude Garcia failed to meet his burden of showing the pretrial publicity was prejudicial and inflammatory. *See Gonzalez v. State*, 222 S.W.3d 446, 450–51 (Tex. Crim. App. 2007). News stories that are accurate and objective in their coverage

23

are generally not considered prejudicial or inflammatory. *Id*. at 451. Aside from Garcia's assertion that the unveiling of a mural dedicated to Bighamian exacerbated the publicity of this case, he presented no argument or evidence of any prejudice. We overrule Garcia's fourth issue.

## VI. ADMISSION OF EVIDENCE

In his fifth issue, Garcia contends that the trial court erred by admitting "at the punishment phase evidence of prior convictions without approving the oral stipulation of evidence in writing." In his seventh issue Garcia argues that there was insufficient evidence corroborating his confession because the trial court did not approve the stipulation of physical evidence submitted during the testimony of the crime scene investigator, Katherine Pina. In his eighth issue, Garcia argues that the trial court erred in admitting evidence of prior convictions without approving the oral stipulation in writing.

### A. Waiver

In his fifth issue, Garcia presents no references to the record, no citations to authority, and no argument other than mere assertions that error was committed. *See* TEX. R. APP. P. 38.1(i). Garcia presents nothing for our review on this issue. Accordingly, Garcia's fifth issue is overruled.

### B. Oral Stipulation

By his seventh and eighth issues, Garcia argues that certain evidence should have been excluded because it was admitted without the trial court's written approval of the oral stipulations. Garcia directs this Court to our decision in *Camacho v. State*, 968 S.W.2d 388 (Tex. App.—Corpus Christi 1997, no pet.) to support his assertion that "[o]ral stipulation of evidence must be approved in writing by the trial judge." However, *Camacho*

24

is not on point.  There, the underlying issue dealt with a case in which a jury trial had been waived, specifically dealing with Article 1.15 of the Texas Code of Criminal Procedure. *Camacho*, 968 S.W.2d at 390–91; *see* TEX. CODE CRIM. PROC ANN. art. 1.15 (West, Westlaw through 2017 1st C.S.).   This statute is mandatory and must be followed in order for a stipulation to be considered evidence where the plea is before the court, including pleas of not guilty where a jury trial has been waived.   *Camacho*, 968 S.W.2d at 391. Because appellant's case was tried by a jury, the requirements regarding stipulations of evidence found in Article 1.15 have no application here.  *Wright v. State*, 28 S.W.3d 526, 537 (Tex. Crim. App. 2000) (citing *McClain v. State*, 730 S.W.2d 739, 744, n. 1 (Tex. Crim. App. 1987) (en banc); *Messer v. State*, 729 S.W.2d 694, 699 (Tex. Crim. App. 1986) (en banc)).  Accordingly, Garcia's seventh and eighth issues are overruled.

## VII.   CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of May, 2019.

25